## Richmond.

SULPHUR MINES CO. OF VIRGINIA *v.* BOSWELL, BOWMAN &
SHUMAN, AND OTHERS.

April 1, 1897.

Absent : CARDWELL, J.

1. CHANCERY JURISDICTION—*Cloud on title*—*Conflicting claim of defendants*—
   *Boundary line.*—Courts of equity have jurisdiction to remove clouds from
   the title of real estate where the party complaining has no adequate rem-
   edy at law.   But the clouds which they will remove are instruments or
   proceedings in writing, which appear upon the records, and thereby cast
   doubts upon the validity of the record title.   A mere verbal claim, or an
   oral assertion of ownership of the property, or an unrecorded survey con-
   stituting no part of the chain of title, is not sufficient.   Nor will a court
   of equity entertain a bill to compel defendants to litigate their respective
   claims to the property, or to establish a boundary line between them,
   where the complainant has no equity against the defendant claiming ad-
   versely to him.

2. CHANCERY PLEADING—*Dismissal of bill*—*Effect on cross-bill.*—The dismissal
   of an original bill against a defendant because not a proper party, car-
   ries with it the dismissal of a cross-bill against that defendant filed by a
   co-defendant.

Appeal from a decree of the Circuit Court of Louisa county,
pronounced March 21, 1894, in a suit in chancery wherein
Boswell, Bowman and Shuman, and another, were the com-
plainants, and the appellant and others were the defendants.

*Reversed.*

The opinion states the case.

*Christian & Christian* and *Leake & Carter*, for the appel-
lant.

*R. L. Gordon, S. V. Southall, F. W. Sims* and *W. H. Mann,* for the appellees.

Riely, J., delivered the opinion of the court.

On September 17, 1891, the firm of Boswell, Bowman & Shuman, and John S. Fleming, bought from the heirs at law of Robert S. Ellis, deceased, all of the pyrites or sulphur vein on a certain tract of land in Louisa county, and also fifty yards in width of the surface of the land so located as to include the said vein, and agreed to pay therefor the sum of $7,500, on January 12, 1892, and the like sum with interest thereon twelve months thereafter.    The vendors bound themselves, upon the receipt of the first payment, to make to the vendees ' 'a good and perfect title in fee simple,'' to the property, taking a deed of trust thereon to secure the last payment.

The Circuit Court of the said county having previously entered a decree for the sale of the land in a suit brought in part for that purpose, the sale at the instance of the parties thereto, in order to perfect the title, was reported to the court on September 23, 1891, by the commissioner appointed by it to make the sale.    The court ratified and confirmed it, and appointed a commissioner to convey to the vendees, in accordance with the terms of the sale, the title to the property so purchased by them, upon the payment of the sum of $7,500.

At or about the time the sale was reported to the court for its confirmation, the vendees learned that the Sulphur Mines Company of Virginia disputed the right of the Ellis heirs to the pyrites or sulphur vein, and also their right to the strip of land sold along with it.

'    They ascertained that the company based its claim of title to the pyrites or sulphur vein upon two certain deeds made by John Ellis, David M. Hunter, and James Bibb,—the one

to the Forked Run Mining Company, dated September 10, 1836, under which the heirs of Robert S. Ellis claim, and the other to Thomas Mayberry, dated January 1, 1840, under which the Sulphur Mines Company claims; and that it claimed the surface of the land under the latter deed, and by virtue of a survey made in 1866 by A. J. Perkins, county surveyor, of the lands of the Victoria Mining and Manufacturing Company, which are now owned by the Sulphur Mines Company.

It appears from these deeds that the grantors, Ellis, Hunter, and Bibb, were the owners of a tract of land of $104\frac{1}{4}$ acres, and that by the deed of September 10, 1836, they sold and conveyed by metes and bounds, according to a survey and plat made by David Richardson, surveyor of Louisa county, to the Forked Run Mining Company, a certain part thereof, "containing about seventy-five acres, and being in exclusion of that part of said tract of $104\frac{1}{4}$ acres through which the iron vein runs, marked on said plat, 'Iron vein S. 28 W.' * * * with all and singular the appurtenances, as also all the profits, mines, minerals, ores, etc." By the deed of January 1, 1840, they conveyed $29\frac{1}{4}$ acres, "the remainder of a tract of land owned by said Ellis, Hunter, and Bibb, after selling seventy-five acres of said tract of land to the president and directors of the Forked Run Mining Company."

The vendees, upon learning of the claim asserted by the Sulphur Mines Company, did not make their first payment on January 12, 1892, as required by the terms of their contract, but filed their bill on January 18, 1892, in the said Circuit Court against their vendors and the Sulphur Mines Company of Virginia, in which they set forth at length their purchase of the property as aforesaid, and the claim thereto of the Sulphur Mines Company, with the ground on which they understood it to be founded, as hereinbefore briefly stated. In their bill, they called upon the company to disclose the grounds on which it rested its claims to the property purchased from the Ellis heirs by the complainants, and prayed

the court to determine the validity of its claim or claims, to cancel any deed or instrument, or any clause or part thereof, so far as it might apply to the property purchased by the complainants, and thus quiet and remove the cloud from the title. They further asked that the court, in the event that it should decide against the validity of the claim or claims of the Sulphur Mines Company, require the Ellis heirs to execute and deliver to the complainants a good and valid title to the property, but if it should decide in favor of the said company, that it would then rescind and annul their contract of purchase.

The Ellis heirs answered the bill and averred that their father was in the continuous, exclusive, and adverse possession of the parcel of land of 75 acres from the time he purchased it in 1848 until his death in 1886, and that they had continued in such possession after his death until they sold it to the complainants, and insisted that neither the phraseology of the two deeds referred to, nor the Perkin's survey, which, they claimed, was a mere private survey, gave to the Sulphur Mines Company any right or title, or color of title, to the property they had sold to the complainants, and that they were able, without the aid of a court of equity, to make to them a good and perfect title thereto, and would do so upon their compliance with their contract and the decree aforesaid of the September term, 1891. Their answer was ordered by the court to be treated as a cross-bill against the Sulphur Mines Company, and the latter required to answer it, which it did.

The Sulphur Mines Company demurred to the bill of the complainants, and also answered it. In its answer, it denied any right or title in the Ellis heirs to the pyrites or sulphur vein, which it claimed, lies underneath the "Iron vein" marked on the Richardson survey, and is in reality a part of it, and asserted their right to it, and also to the land according to the boundaries designated on the Perkin's survey. By

its answer, it also denied the right of the complainants to im-
plead it in a court of equity with respect to the matters in
dispute between it and the Ellis heirs, which question was
also raised by its demurrer. The jurisdiction of equity is,
therefore, the first matter for our determination.

The jurisdiction of courts of equity to remove clouds from
title where the party complaining has no adequate remedy at
law is well settled. Pomeroy's Eq. J., sec. 1398; *Va. Coal
& Iron Co.* v. *Kelly*, 93 Va. 332, and cases there cited. But
is this in reality a suit of that nature?

The bill shows that the real object was not to remove a
cloud upon the title by the cancellation of some instrument
or proceeding constituting the alleged cloud, which is the
ground of the equitable jurisdiction sought to be invoked, but
was an effort on the part of the complainants to compel the
Sulphur Mines Company and the Ellis heirs to litigate their
respective claims to the property, and have a court of equity
decide to which of them the pyrites or sulphur vein belonged,
and establish the true boundary line between the two parcels
of the original tract of land of $104\frac{1}{4}$ acres, so that the com-
plainants might not incur any risk in paying for the property
in accordance with the terms of their purchase; for, so far as
the mineral vein was concerned, there was nothing to be can-
celled or removed. The complainants, and the Ellis heirs un-
der whom they claim, rely for their title to the mineral vein
upon the deed from Ellis, Hunter, and Bibb, to the Forked
Run Mining Company. It is their source of title. They do
not claim that it is incorrect in any respect, or that its pur-
port or effect is in anywise different from what was intended
by it. They cannot, therefore, ask to have it or any part of
it cancelled. And there is nothing in the deed from Ellis,
Hunter, and Bibb to Thomas Mayberry, under whom the Sul-
phur Mines Company claims, in conflict with it. So that
with respect to the mineral vein, it is simply a question of
the construction of the two deeds.

Nor as to the matter of the boundary line was there anything to cancel or remove. It does not appear that the Perkins survey was made a part of the subsequent conveyances of the property, or that the property claimed to be covered by it was conveyed by the metes and bounds given in that survey and plat. A private survey and map never recorded, not referred to or made a part of the deed under which the party relying on it claims, cannot be considered color of title. *Sulphur Mines Co.* v. *Thompson's Heirs*, 93 Va. 293. So that the Perkins survey and plat does not constitute a cloud upon the title of the Ellis heirs, which they or the complainants are entitled to have removed by the cancellation of the survey and plat.

A bill will not lie to remove, as a cloud upon the title, a mere verbal claim or an oral assertion of the ownership of property. The clouds upon title, which courts of equity remove, are instruments or proceedings in writing, which appear upon the records and thereby cast doubt upon the validity of the record title.

The bill, when analyzed, shows that though filed under the pretence of removing a cloud upon the title to the property bought by the complainants, it is in reality a suit to try the title between their vendors and the Sulphur Mines Company, and to establish the boundary between them.

In *Stuart Heirs &c.* v. *Coalter*, 4 Ran. 74, a case that Judge Carr afterwards said, in *Lange* v. *Jones*, 5 Leigh 192, was "very much considered," it was held that a court of equity has no jurisdiction to settle the title or boundaries of lands between adverse claimants, unless the plaintiff has an equity against the defendant claiming adversely to him, and that an equity against other persons will not give such jurisdiction.

The principle enunciated in this case has been steadfastly adhered to by this court in a number of cases. *Lange* v. *Jones, supra; Carrington et als* v. *Otis*, 4 Gratt. 235; *Steed*

v. *Baker et al*, 13 Gratt. 380; and *Collins* v. *Sutton, ante,* p. 127.

Jurisdiction in equity cannot be maintained of the case at bar without overturning the principles of those decisions, and this we have no disposition to do. The record shows no privity whatever between the complainants and the Sulphur Mines Company, and fails to disclose any equity in their favor against it. It is simply the ordinary case of the purchase of real estate and the subsequent discovery that a third person claims to have a superior right to it; and however advantageous it may be to the complainants to have the title and boundaries of their purchase settled and defined in advance of the payment of the purchase money, they have no right under the circumstances shown to implead the appellant in a court of equity.

The bill should have been dismissed as to the Sulphur Mines Company, and with such dismission the cross-bill would fall, for the company not being properly a party to the original bill, it could not be made a defendant to a cross-bill. *Derbyshire* v. *Jones, ante,* p. 140.

For the foregoing reasons the decree appealed from must be reversed, the bill dismissed as to the Sulphur Mines Company of Virginia, and the cause remanded to the Circuit Court for such further proceedings to be had therein as the complainants may be advised they are entitled to, and which to the court may seem proper.

*Reversed.*