# Richmond.

HANGER v. COMMONWEALTH.

AND

CRAWFORD SOCIAL CLUB, INC., v. COMMONWEALTH.

January 16, 1908,

1. APPEAL AND ERROR—*Jurisdiction of Trial Court—Sunday Law—Forfeiture—How Recovered.*—The forfeiture prescribed by section 3799 of the code for a violation of the Sunday law can be recovered by civil warrant only, and the objection that the procedure was by a criminal warrant instead of a civil warrant, may be raised in this court for the first time. The question of jurisdiction of the subject matter of litigation is an open one in every case until the case is finally disposed of.

2 APPEAL AND ERROR.—*Correct Verdict—Ruling on Instructions.*—Where it plainly appears that the verdict of the jury could not have been other than it was, this court will not consider the ruling of the trial court in granting or refusing instructions.

3. SOCIAL CLUBS—*Incorporation—Unlawful Business*—Social clubs authorized to be chartered under the statutes of this state are manifestly intended to be purely social. It was clearly never intended to confer upon such organizations authority to conduct a business which an individual cannot lawfully conduct. A charter of incorporation may be granted by the State Corporation Commission to an association to conduct any business that an individual may lawfully conduct, but never to conduct a business which an individual may not lawfully conduct under existing laws.

4. SOCIAL CLUBS—*Incorporation—Fraudulent Purpose—Violation of Sunday Laws.*—The evidence in this case shows that the object in obtaining a charter for a social club and the pretended organization thereunder was for the fraudulent purpose, on the part of the incorporators, of securing the privilege of selling tobacco, cigars, cigarettes, soda water and other soft drinks on Sunday—a privilege which they could not exercise as individuals without violating existing statutes—and the charter of said pretended social club was therefore properly vacated and annulled.

Error to judgments of the Hustings Court of the city of Portsmouth. To a judgment of conviction under a criminal warrant, Hanger assigns error. To a judgment annulling the charter of the Crawford Social Club, it assigns error.

*Prosecution against Hanger Dismissed.*

*Judgment against Crawford Social Club Affirmed.*

The opinion states the case.

*Thos. H. Willcox* and *R. H. Bagby,* for Hanger.

*R. H. Bagby,* for Crawford Social Club.

*Robert Catlett, Assistant to Attorney-General,* and *W. H. Stewart,* for the commonwealth.

CARDWELL, J., delivered the opinion of the court.

It may be said that these are companion cases. They were argued together here, and will be disposed of in this opinion in the order named.

The plaintiff in error, S. T. Hanger, in the first-named case, complains of a judgment in the lower court, affirming a judgment rendered by the mayor of the city of Portsmouth, whereby he was fined $2.00 for personal violation of section 3799, known as the "Sunday Law," and $2.00 each for two servants employed by him at work on the same day.

Section 3799 of the Code, *supra,* was construed by this court in the recent case of *Wells* v. *Commonwealth, ante, p.* 834, 1 Va. App. 211, 57 S. E. 588, where it is held, that the forfeiture prescribed for a breach of the statute cannot be recovered by a criminal warrant, but must be by civil warrant. We are met,

therefore, at the threshold of this case with the question of jurisdiction.

It is argued for the commonwealth that, as no objection was made in the trial court to the form and nature of the proceedings, plaintiff in error is precluded from making that objection here; but, as was said by Buchanan, J., in *Southern & Western R. Co.* v. *Commonwealth,* 104 Va. 314, 51 S. E. 824, citing a number of authorities: "To hold that the question of the jurisdiction of the trial court could not be made in the appellate court for the first time, would be in effect to hold that consent could give jurisdiction and might result in the affirmance of a judgment which the trial court had no authority to enter."

Among the authorities cited is *Jones & Ford* v. *Anderson,* 7 Leigh 308, 314, where it is said: "It must always be *ex officio* the duty of a court to disclaim a jurisdiction which it is not entitled to exercise. To do otherwise would be to usurp a power not conferred by law."

See also *Furst* v. *Banks,* 101 Va. 208, 43 S. E. 360; and *Wayt* v. *Glasgow,* 106 Va. 120, 55 S. E. 536, where it is said that the question of jurisdiction is an open question in every case until the case is finally disposed of.

It follows that the judgment in this case must be reversed; and this court will enter such judgment as the Hustings Court for the city of Portsmouth should have entered, dismissing the prosecution.

The writ of error in the second case is to a judgment of the Hustings Court for the city of Portsmouth, annulling the charter of the plaintiff in error obtained from the State Corporation Commission, pursuant to its authority to grant charters to organizations known as social clubs.

The proceedings were had upon a writ of *quo warranto,* issued by the lower court upon a petition filed by the attorney for the commonwealth for the city of Portsmouth; the grounds stated upon which the said charter was asked to be annulled

revoked and vacated being, (1) misuse of the corporate privileges and franchises conferred by the charter; (2) for the exercise of a privilege and franchise not conferred by law; and (3) because the charter of incorporation was obtained for a fraudulent purpose, and for a purpose not authorized by law.

The judgment complained of was rendered upon the verdict of a jury finding the facts to be as charged in the petition for the writ of *quo warranto;* and plaintiff in error relies upon two assignments of error for a reversal of the judgment—first, misdirection of the jury; and, second, the refusal of the trial court to set aside the jury's verdict as contrary to the law and the evidence.

As we view the case, it is needless to consider the instructions given or refused, since it appears plainly from the evidence that no other verdict could have been rendered thereon than that rendered by the jury. *Interstate &c. Co.* v. *Clintwood &c. Co.,* 105 Va. 374, 54 S. E. 593; *Southern Ry. Co.* v. *Oliver,* 102 Va. 710, 47 S. E. 862; *Leftwich* v. *Wells,* 101 Va. 255, 43 S. E. 364, 99 Am. St. Rep. 865; *Richmond Pass. &c. Co.* v. *Steger,* 101 Va. 319, 43 S. E. 612.

The law authorizing the chartering of social clubs is found in ch. 4 of the "Act concerning corporations," Acts 1902-3-4, p. 461; and while the act does not define the functions that may be exercised by such corporations, and there is no general law describing the character of the business that may be done, or regulating the conduct of corporations of this nature, it was clearly never intended to confer upon the organization authority to conduct a business which, if conducted by an individual, would be in violation of law. A charter of incorporation may be granted to an association of persons to conduct any business that an individual may lawfully conduct under the laws of the state (*Ward L. Co.* v. *Henderson-White Mfg. Co., ante* p. 626, 59 S. E. 476, recently decided by this court), but never to au-

thorize the conduct of a business which an individual may not lawfully conduct under existing laws.

The functions of social clubs, authorized to be created by the statute, *supra,* manifestly are intended to be purely social; otherwise, it would have been needless to enact ch. 4 of the act, *supra,* separate and in addition to ch. 1 of the same act, which provides for the incorporation of stock companies for general business purposes.

The purposes for which plaintiff in error was organized, as shown by its certificate of incorporation, are as follows:

"Social fellowship and companionship among its members, promoted by intercourse and contact with each other, and to this end to furnish a place where meetings may be held, where questions of the day may be discussed, and innocent amusements engaged in, with the privileges of providing and furnishing, at any and all times, to its members, for pay, diet and refreshments of any and all kinds; cigars, cigarettes and tobacco; and any and all such drinks as are commonly known as soft drinks, such as soda waters, mineral waters, ginger ale and all other drinks except wines, ardent spirits, malt liquors, or any mixture thereof, alcoholic bitters, or bitters containing alcohol, which are hereby prohibited. And with the further privilege of providing and furnishing, at any and all times, to its members, for pay, such other articles and things and such services as they may desire."

Every purpose declared and every right and privilege conferred by the charter, is conferred on members of the club; therefore, it was clearly intended to be a *social club,* and not a business corporation.

The evidence in the case conclusively shows that the Hanger Drug Co., of the city of Portsmouth, prior to the organization of plaintiff in error, had habitually violated the "Sunday Law," *supra;* that on the 3rd of May, 1906, the Hanger Drug Co., or S. T. Hanger, its president, was notified by the chief of

police, under orders from the mayor, that the law against selling on Sunday would be enforced; that on Sunday, May 6, 1906, following this notice, the Hanger Drug Co. strictly observed the "Sunday Law," and made no sales of tobacco, soda water, etc.; that on May 9, 1906, the said S. T. Hanger, J. T. Jarrett and L. B. Whatley made the certificate of incorporation for obtaining the charter of plaintiff in error; that the said S. T. Hanger was the president of the Hanger Drug Co., the said J. T. Jarrett a stockholder in the company, and the said L. B. Whatley, a clerk in its employ; that on the 11th day of May, 1906, the following advertisement appeared in the *Portsmouth Star,* a newspaper published in the city of Portsmouth:

### "THE CRAWFORD SOCIAL CLUB

will be open for membership Friday, 8 P. M., and the club's charter entitles its members to harmless entertainment and refreshments, for pay, at any and all times, such as soft drinks, cigars, tobaccos, confections, newspapers, etc.

"There is no initiation fee. There are no dues. You express your desire to become a member by signing an application and the officers issue you a membership certificate. Apply to

"HANGER'S PHARMACY,

"Portsmouth, Va."

On the 12th day of May, 1906, an agreement of lease between the Hanger Drug Co. and plaintiff in error was entered into, whereby the latter was to have the use of the rear room of the building (occupied by the Drug Co.) as a place of meeting for its members, and to have the privilege of running the soda fountain and supplies, the use of the tobacco, cigars and cigarette stand and accessories, and also the candy and confectionary stand, etc., the Hanger Drug Co. to keep "the soda fountain and stands fully supplied for the use of the members of the

club, and furnish the same as they may desire;" and in con-
sideration of a compliance with the covenants of the agreement
on the part of the Hanger Drug Co., it was to have ninety *per
cent.* of the gross receipts from all sales made to members of the
club.

On the next day after this agreement was entered into, which
was Sunday, May 13, 1906, the store of the Drug Co. was
opened, and the said S. T. Hanger and his usual employees were
engaged in selling the articles mentioned in the agreement of
lease, and every day thereafter the store was opened, including
Sundays, and tobacco, cigars, cigarettes, soda water, etc., sold
by employees of the Drug Co., or of plaintiff in error, to the
general public on week days, but only to the so-called members
of the club on Sundays. The most inadequate provision was
made for the "association" of the members of the club, and no
meetings of the general membership thereof were ever held,
and only occasional meetings were held by the directors. S. T.
Hanger being the president of both the "Crawford Social Club"
and the Hanger Drug Co., and practically the owner of the
latter's business, the direction and control of the affairs of the
club, as well as the business of the Drug Co., was in the hands
of Hanger and his employees. To become a member of the
club, it was necessary only to sign an application and receive a
membership certificate. With this certificate in his possession,
the holder could buy in the open store of the Drug Co., on Sun-
day, cigars, cigarettes, tobacco, any and all such drinks as are
commonly known as soft drinks, and all other drinks, except
wines, etc., sold to any and all persons at the store on week
days; and practically no other use is made of the certificate or
membership in the club.

Upon the foregoing facts, it too plainly appears to admit of
discussion, that the obtaining of the charter in question and
the pretended organization of a *social club* thereunder was for
the fraudulent purpose of securing the privilege of selling to-

bacco, cigars, cigarettes, soda-water, and other soft drinks on Sunday—a privilege which an individual could not exercise without incurring the forfeiture prescribed in section 3799 of the code, *supra.*

Doubtless social clubs are generally regarded, in morals and in law, as·free from condemnation and even censure, when organized in good faith, and conducted in accordance with what was intended by the lawmaking power of the state in authorizing their incorporation; but where it is made to appear, as in this case, that the charter of such an organization was fraudulently obtained, or was being used for the fraudulent purpose of conducting a *business* which an individual may not lawfully conduct in this state, or as a cloak to shield an individual or a corporation from punishment for the violation of existing statutes, enacted for the good order and welfare of our people, not only should the punishment prescribed by the statute for such an offence be imposed, but the charter of the offending so-called social club be annulled and vacated. It would be a reproach to the courts of the state were they to sanction or let go unpunished violations of our police regulations by an incorporated social club or organization, for which an individual could not escape punishment. The statutes authorizing the incorporation of social clubs have no such power in view.

That an affirmance of the judgment in this case, as argued by counsel for plaintiff in error, would be to declare that all social clubs in this state are being conducted in violation of our statutes, and their charters void, is a *non sequitur.* In any case where, as in this, it is made clearly to appear that the charter of such a club was fraudulently obtained, or is being abused by its use to shield individuals or an incorporated company from punishment for violating the laws of the land, or otherwise, such a charter, in a proper proceeding for that purpose, should and doubtless would be adjudged null and void.

We are not called upon here to declare what would and what

would not be an abuse of its charter by a social club, as that question has to be determined upon the facts of the particular case. In the case before us, as already observed, the proof leaves no room to doubt that the charter in question was obtained and was being used as a mere make-shift to enable the practical owner and proprietor of the Hanger Drug Co. to do, under the cloak of the charter, that which an individual could not do and escape punishment.

The judgment of the lower court, annulling and vacating the charter of the plaintiff in error, is plainly right, and will be affirmed.

*Case No. 1, Dismissed.*
*Case No. 2, Affirmed.*