### LITZ AND OTHERS V. ROWE AND OTHERS.

September 9, 1915.

1. EQUITY JURISDICTION—*Title and Bounds of Land.*—In the absence of some peculiar equity, courts of equity are without jurisdiction to settle disputes regarding the title and boundaries of land.

2. EQUITY JURISDICTION—*Jurisdiction of Subject-Matter—How Objection Raised—Consent.*—If a controversy belongs exclusively to a court of law, no acquiescence or consent of parties can give a court of equity jurisdiction over it. The court of equity will itself take notice of the lack of jurisdiction and dismiss the cause. Nor is it material that the attention of the court was called to it by the party who invoked the jurisdiction. It is the duty of the court to dismiss the suit whenever it appears in any way that it has not jurisdiction of the subject-matter.

3. APPEAL AND ERROR—*Costs.*—Although a decree of the trial court be reversed at the instance of the appellants, if the reversal is not upon any error assigned by them but upon an error which they invited and which was committed over the protest of the appellees, the costs will be decreed in favor of the appellees, as the parties substantially prevailing.

Appeal from a decree of the Circuit Court of Buchanan county in a suit in chancery wherein appellants filed a petition. From an adverse decree petitioners appeal.

*Reversed.*

In the year 1900 Rhoda Payne instituted a suit in equity to have partitioned between her and the heirs at law of Catherine Rowe a tract of land in Buchanan county alleged to contain 500 acres. The land was described by local references and by metes and bounds in a deed dated December 15, 1899, filed as an exhibit with the bill, from W.

L. Moore and wife and Sallie W. Baldwin to Rhoda Payne and Catherine Rowe, and this land came to be known in the record as the "Moore tract" in contradistinction to the "Peery tract" of a like number of acres.

A number of questions arose and various proceedings were had in the cause, but it will not be necessary to recite them all in detail.

During the progress of the cause T. C. Payne filed a petition claiming to be the owner in fee simple of the tract of land sought to be partitioned, basing his claim upon a deed which he had obtained on July 15, 1901, from T. E. Peery for a tract of 500 acres. His petition asserted that the land so conveyed to him by Peery was the same identical land as that mentioned and described in the bill in the cause. In other words, his contention was that the Moore tract and the Peery tract were one and the same, and that he had acquired the true title from Peery. If this claim as to boundary was true, it did not so appear from the respective descriptions in the two deeds.

On March 31, 1905, there was a decree for partition of the Moore tract, but the partition was never made, and on July 26, 1907, upon an admission "in open court by counsel representing the parties in interest, that Rhoda Payne and T. C. Payne had conveyed to J. J. Rowe and the heirs of Catherine Rowe all their right, title and interest in and to the land in controversy in this suit, and that said suit had been compromised and settled as between them," the decree for partition was set aside and the commissioners who had been appointed to divide the land were discharged. The suit was, however, retained on the docket for another purpose in no way germane to the decision of this appeal.

On November 27, 1909, more than two years after the last recited decree, Geo. W. Litz, W. L. Dennis and Louisa S. Day (the appellants), over the objection of the said

95

J. J. Rowe and the heirs of Catherine Rowe (appellees), were allowed to file a petition in the cause in which, after reciting at some length the record and proceedings, they set up in themselves, as grantees of said T. C. Payne, ownership of certain interests in a tract of 500 acres, known as the Peery tract, which they alleged was separate and distinct from the Moore tract. Without reciting them in full, it is sufficient to say that the allegations of this petition, read in the light of the record as it then existed, were such as to necessarily raise, as they did, questions regarding both the title and the boundaries of the two 500 acre tracts. The prayer of the petition was that the parties to the original suit be made parties defendant, "that said decree of July . . . , 1907, be set aside in so far as it purports or might be construed to affect the rights of petitioners," that surveyors be appointed to locate and survey the Moore tract and the Peery tract, and for general relief.

J. J. Rowe and the heirs of Catherine Rowe, who were among the defendants named in the petition, filed a demurrer and answer. The demurrer, which was in effect overruled by the next recited decree, raised the question of jurisdiction. The answer admitted that the Moore and Peery tracts were separate and distinct tracts, alleged a perfect and complete title as against the petitioners and all others to the Moore tract, disclaimed any part of the Peery tract unless the same should lap on the Moore tract, and asserted a claim of ownership to any such lap if it existed. The answer further stated that respondents had no objection to the court directing a survey of both tracts, as prayed for in the petition.

On November 24, 1910, a decree was entered directing that said two tracts of land be surveyed and located as prayed for in the petition, and appointing R. M. Hurt, a surveyor, to survey and locate both of said tracts of land.

On April 19, 1911, the said Hurt filed a report, and on that date a decree was entered upon a suggestion to the court "by counsel of all parties," providing for an issue out of chancery to determine (1) the true location of the Moore tract, and (2) whether or not any part, and if so how much, of the Peery tract lapped upon or included any part of the Moore tract.

Upon the trial of this issue a great deal of evidence was produced before the jury, and on April 28, 1913, the jury rendered a verdict fixing the boundary of the Moore tract and showing that the Peery tract lapped thereon in such way that the two boundaries included practically the same land.

The appellants moved the court to set aside the verdict, and the motion was overruled. At a later day J. J. Rowe and the heirs of Catherine Rowe moved the court to enter a decree directing and making the verdict of the jury the judgment and decree of the court, and fixing the true boundary lines of the Moore tract as determined by the jury in their verdict, and to award a writ of possession against the appellants; and the said appellants, on their part, moved the court to dismiss the original bill and all petitions filed in the cause, "and to dismiss the whole proceeding because the same being a suit for partition, and conflicting claims of title having arisen, the court has no jurisdiction to hear and determine the matters in said cause."

On the 8th of August, 1913, a decree was entered making the verdict of the jury the judgment of the court, declaring the true location of the Moore tract to be as found in the verdict, and awarding a writ of possession in favor of J. J. Rowe and the heirs of Catherine Rowe for said land.

On the 27th day of November, 1913, the appellants, Litz, Dennis and Day, moved the court to set aside the last recited decree, because (1) the verdict of the jury shows

that the land sought to be partitioned is claimed by the petitioners as well as by the plaintiffs in the issue out of chancery under separate and distant titles, (2) because the legal title to all of the interlock between the two tracts was at the time of the verdict and is now "vested in the petitioners as is shown by the pleadings and exhibits and by certain other deeds and records in evidence," and on other grounds, not necessary to recite.

Finally, on the 28th of April, 1914, the court overruled the motion aforesaid and refused to set aside the decree, and thereupon the appellants applied for and obtained this appeal, contending (1) that the court erred in refusing to set aside the verdict of the jury and in making the same the decree of the court, because the same was contrary to the evidence, (2) that the court erred in holding "that it had jurisdiction to direct partition of said land at all for the reason that, under the verdict of the jury and the decree of the court, two conflicting titles exist as to said land," (3) that "even if it be conceded that the jury was correct in locating both of said grants so as to include the same tract of land, and if it be conceded that the court had jurisdiction to determine and adjudicate the questions of title arising," the court erred in decreeing that said land belonged to the plaintiffs in the said issue, (4) that even if it be admitted that the Moore title was superior to the Peery title, still the plaintiffs in the issue would be entitled to no more than one-half of the land, this being true waiving all questions of jurisdiction and true title and assuming that the verdict of the jury was right as to the location of the lands, "for it is clearly shown that your petitioners own one-half of the title, whatever it was, conveyed by W. L. Moore and others to Rhoda Payne," and (5) the court erred in not setting aside the decree of the 8th of August, 1913, upon the motion of the petitioners.

In concluding this statement it may be well to add that the title to the Moore tract and the Peery tract orginated in two land grants or patents from the Commonwealth of Virginia, issued upon surveys of the same date, purporting to have been made by the same surveyor, the one thereof dated May 1, 1851, to S. L. Graham and D. H. Harmon, and the other thereof dated November 1, 1851, to S. L. Graham and J. B. Wise, and that the respective claims of the appellants and the appellees regarding both the title and the boundaries thereof are complicated by several difficult questions.

*M. O. Litz, Greever & Gillespie* and *A. A. Skeen,* for the appellants.

*Finney, Stinson & Lindsay,* for the appellees.

KELLY, J. (after making the foregoing statement), delivered the opinion of the court.

We are of opinion that it was error to permit the appellants to file their petition, that the court had no jurisdiction of the matters arising thereon, and that all proceedings thereunder were null and void. The objection to the filing of the petition, and the demurrer thereto, were both good and should have been sustained.

The petition could not have had any other effect than that which it actually produced, namely, to call into requisition the court's judgment upon a dispute regarding the title and boundaries of land. That courts of equity are without jurisdiction to settle such a dispute, in the absence of some peculiar equity (not existing in this case) is perfectly well settled. *Stuart Heirs* v. *Coalter,* 4 Rand. (25 Va.) 74, 15 Am. Dec. 731; *Lange* v. *Jones,* 5 Leigh (32 Va.) 192; *Carrington* v. *Otis,* 4 Gratt. (45 Va.) 235; *Steed* v.

*Baker,* 13 Gratt. (54 Va.) 380; *Collins* v. *Sutton,* 94 Va. 128, 26 S. E. 415; *Sulphur Mines Co.* v. *Boswell,* 94 Va. 480, 485, 27 S. E. 24; *Calloway* v. *Webster,* 98 Va. 790, 791, 37 S. E. 276; *Deane* v. *Turner,* 113 Va. 237, 74 S. E. 165; *Freer* v. *Davis,* 52 W. Va. 1, 43 S. E. 164, 59 L. R. A. 556, 94 Am. St. Rep. 895.

It is true that the appellants invoked the jurisdiction of the court, and that the appellees (after they had resisted the filing of the petition, however, and had entered a demurrer thereto) expressed in their answer a willingness to have the two tracts surveyed as prayed for in the petition. But this is a controversy which belongs exclusively to a court of law, and no acquiescence or consent could create a jurisdiction over it in equity. Merwin's Eq., sec. 108, p. 59; *Stuart's Heirs* v. *Coalter,* 4 Rand (25 Va.) 74, 79, 15 Am. Dec. 731; *Boston Blower Co.* v. *Carmen Lumber Co.,* 94 Va. 94, 100, 26 S. E. 390; *Freer* v. *Davis, supra.*

In his Notes on Equity Jurisprudence, at p. 8, Prof. W. M. Lile says: "It is settled, save possibly in Masachusetts, that *consent cannot confer jurisdiction*—that is to say, if a suit which properly belongs to a court of law be brought in equity, even though the defendant make no objection, and be willing that equity shall adjudge the matter, the chancellor himself will take notice of the defect of jurisdiction and the cause will be dismissed."

At section 105, page 56, of Merwin's Equity, the author says: "In England and in the United States Supreme Court it is settled by repeated decisions that this is an objection which cannot be waived, because it goes to the jurisdiction, and the court is bound to take notice of it, *sua sponte,* although it is not presented in the pleadings nor even suggested orally by counsel."

In *Freer* v. *Davis, supra,* the Supreme Court of Appeals of West Virginia, with striking relevancy to the present case, says: "While the court had no jurisdiction to pass

upon the question of title, the error in doing so was induced by the plaintiffs themselves.  They brought their suit in the wrong court.  Can they now complain of the action of the court in adjudicating the cause, they having requested it?  To permit them to do so has the semblance of allowing them to take advantage of their own wrong. In 3 Cycl. Law & Proc. 242, it is said that, in general, 'the appellant or plaintiff in error will not be permitted to take advantage of errors which he himself committed, or invited or induced the trial court to commit, or which were the natural consequences of his own neglect or misconduct.'  But, in respect to jurisdiction, the same book says, at the same page: 'While the authorities are in conflict, the better rule would seem to be that, as consent cannot confer jurisdiction, a plaintiff against whom judgment is rendered is not estopped to assert, upon appeal or error, that the court to which he resorted had no jurisdiction of the subject-matter of the suit or of the person of the defendant.'  There are a few cases which seem to oppose this latter view.  *Shellenbarger* v. *Biser,* 5 Neb. 195; *Lounsbury* v. *Catron,* 8 Neb. 469, 1 N. W. 447; *Bollong* v. *Bank,* 26 Neb. 281, 41 N. W. 990, 3 L. R. A. 142, 18 Am. St. Rep. 781.  But it is undoubtedly supported by the better and more numerous authorities.  See *Wildman* v. *Rider,* 23 Conn. 172, where it is held to be immaterial how the want of jurisdiction is brought to the notice of the court; *Telegraph Co.* v. *Taylor,* 84 Ga. 408, 11 S. E. 396, 8 L. R. A. 189; *Bell* v. *Fludd,* 28 S. C. 313, 5 S. E. 810; *Capron* v. *Van Noorden,* 2 Cranch, 126, 2 L. Ed. 229; *U. S.* v. *Huckabee,* 16 Wall. 414, 21 L. Ed. 457.  In *Railroad Co.* v. *Swan,* 111 U. S. 379, 4 Sup. Ct. 510, 28 L. Ed. 462, it is held: 'This court will, where no motion is made by either party, on its own motion, reverse a judgment for want of jurisdiction, not only in any case where it is shown negatively that jurisdiction does not exist, but even when it does not

appear affirmatively that it does exist.' Mr. Justice Matthews delivered the opinion of the court in that case, and in it he reviews numerous decisions of the court bearing upon the question. The following extract is deemed to be not only applicable to the question raised here, but also fairly conclusive of it: 'It is true that the plaintiffs below, against whose objection the error was committed, do not complain of being prejudiced by it; and it seems to be an anomaly and a hardship that the party at whose instance it was committed should be permitted to derive an advantage from it; but the rule, springing from the nature and limits of the judicial power of the United States, is inflexible, and without exception, which requires this court, of its own motion, to deny its own jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record on which, in the exercise of that power, it is called to act. On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it. This rule was adopted in *Capron* v. *Van Noorden,* 2 Cranch, 126, 2 L. Ed. 229, decided in 1804, on the application of the party against whom it had been rendered in the circuit court, for want of the allegation of his own citizenship, which he ought to have made to establish the jurisdiction which he had invoked.'" See also, *Jones & Ford* v. *Anderson,* 7 Leigh (34 Va.) 308, 314; *S. & W. Ry. Co.* v. *Commonwealth,* 104 Va. 314, 316, 51 S. E. 824; *Hanger* v. *Commonwealth,* 107 Va. 872, 874, 60 S. E. 67; *Minnesota* v. *Northern Securities Co.* 194 U. S. 48, 24 Sup. Ct. 598, 48 L. Ed. 870, 877, and cases cited.

It is clear from the foregoing authorities that, even if the appellees had not resisted the filing of the petition and had not demurred thereto, raising the express jurisdictional question, the court was plainly without jurisdiction, and that its orders upon the petition were void.

This is not the case of a plaintiff coming in an irregular manner into a proper forum and seeking later to take advantage of errors committed at his instance or through his default or acquiescence. The difficulty here is that the proceedings were had in a forum having no jurisdiction of the subject matter. It is not contended that the provisions of Sec. 2562 of the Code, conferring on courts of equity jurisdiction to settle all questions of title that may arise in a partition of lands, have any application to the questions arising upon the petition in this case, and we are of opinion that if such contention were made, it could not be sustained.

This brings us to the question as to just what disposition should be made of the cause at its present stage.

It is to be observed that the appellants are only parties to the suit by reason of their petition. They are not affected by anything done in the cause before they intervened. No partition of the Moore tract was ever made, but the suit was regularly and properly on the docket and the court had jurisdiction to enter the decree of July 26, 1907, which left certain adjustments to be made between some of the original parties to the suit. These adjustments cannot prejudice the rights of appellants and they cannot here complain of them. It follows, we think, that the decrees appealed from should be reversed, the petition of Geo. W. Litz, W. L. Dennis and Louisa S. Day dismissed, all proceedings thereon cancelled and annulled, and the

96

cause remanded for further proceedings to be had therein not in conflict with the views expressed in this opinion.

The costs in this court, however, will be decreed against the appellants. The cause is brought here by them, and the appellees having prevailed on the issue out of chancery are not now complaining, but the reversal, though at their instance, is not upon any error assigned by them but upon an error which they invited and which was committed over the protest of the appellees. Clearly, therefore, the appellants are not the parties substantially prevailing, and they should be required to pay the costs on the appeal. See *Freer* v. *Davis,* and *Railroad Co.* v. *Swan,* cited above, in both of which cases the conclusion here reached upon the question of costs is approved.

*Reversed.*