# Richmond.

## BAILEY AND OTHERS v. JOHNSON AND OTHERS.

### March 16, 1916.

1. PARTITION—*Code, Section 2562—Equity Jurisdiction—Questions Affecting Legal Title.*—In order to give the court jurisdiction in a partition suit under section 2562 of the Code of a "question affecting the legal title" the question must arise as an incident to a partition and must be such as to require a decision before the partition can be satisfactorily made as between the persons at whose instance, or in whose behalf the partition is being made. An independent hostile claim going to the whole property involved, and denying *in toto* and *ab initio* the title of the parties claiming the joint ownership of land, cannot be set up and adjudicated in a partition suit brought by the latter. The provision of section 2562 giving the court jurisdiction of questions of law affecting the legal title, arising in the suit, as well between tenants in common, joint tenants, and coparceners *"as others,"* was never intended to make a proceeding under that section a substitute for an action of ejectment.

Appeal from a decree of the Circuit Court of Sussex county in which appellees were allowed to file their petition. Decree in favor of petitioners and against the complainants. Complainants appeal.

*Reversed.*

The opinion states the case.

*M. G. Mason* and *Wm. B. Cocke,* for the appellants.

*Robt. W. Arnold* and *J. Gordon Bohannon,* for the appellees.

KELLY, J., delivered the opinion of the court.

This suit was instituted in June, 1902, by Peter Bailey and others to obtain partition and division in kind, or a sale and

division of the proceeds, of a tract of 114 acres of land of which Cheeseman Hargrave died seized and possessed. The original papers in the case have been destroyed, but it satisfactorily appears that the partition was sought upon a claim of title through Hargrave's alleged next of kin, Bob Bailey, who was the father of all the parties to the suit except Louisiana Johnson and Alice Roberts. The two parties last named were not related to the others and seem to have been named as defendants because of some supposed interest or claim of title not based on any alleged relationship to the other parties.

By a vacation decree in September, 1902, it was held that the land could not be conveniently partitioned in kind, and a special commissioner was directed to sell the same at public auction. A sale at the price of $125 was made to W. M. Ely, which was confirmed by a decree in October, 1902, and the special commissioner was ordered to make a deed to the purchaser; and, again, by a decree of November 10, 1902, the said special commissioner was directed to collect the purchase money from Ely and to convey the land to him by a good and sufficient deed. This latter decree is the last one appearing in the cause until after the filing of the petition hereinafter mentioned. The commissioner, by deed dated November 12, 1902, conveyed the land to Ely, and it also appears informally in the record that he subsequently collected the purchase money and disbursed the same, including a payment of the costs of the suit. There is no real contest here over the proceeds of the sale, but he made no formal report relative thereto, and the cause is still on the docket.

Ely took and held possession under his deed until April 1, 1903, when he sold and conveyed the land to W. E. King, who, on August 23, 1907, conveyed thirty-eight acres of it to Henry Ricks. These purchasers have been in possession of the land continuously ever since 1902.

In July, 1911, George Cypress and others, were allowed to come in as parties and file their petition in which they aver that they, along with Louisiana Johnson, are the true heirs of Cheeseman Hargrave, and they pray, among other things, that their petition be treated either as a petition for a rehearing or as a bill of review, that the decree of sale be set aside, that their title be quieted, that the land be partitioned or sold again, and for general relief. The real controversy is over the title to the land.

The parties to this litigation, except Ely, are all negroes. There is no dispute about the fact that Cheeseman Hargrave owned the land. The question raised by the petition is as to who were his next of kin. Peter Bailey and other parties in whose favor the original sale for partition was decreed contend that Bob Bailey was a brother (having the same mother) of Cheeseman Hargrave, and that the latter had no other brother or sister, or other relative who could share with Bailey or his heirs in the estate. The petitioners, George Cypress and others, who claim title under one Fannie Cypress, contend on the other hand that if Bob Bailey and Cheeseman Hargrave were half brothers at all they were not children of the same mother, but of the same father, and that the one therefore could not inherit from the other. The petitioners assert that Fannie Cypress was the only sister or brother who survived Hargrave and who could inherit from him, and that her descendants and the descendants of another sister, who died before Hargrave, leaving issue, are his sole heirs.

It will not be necessary to go further into this phase of the case. It involves, suffice it to say, questions of law and fact relating to marriage, legitimacy of offspring, and the statute of descents, as applicable to slaves and free negroes, respectively, prior to 1866, with the result, in any event, that if the original parties in whose favor the sale for partition was made had any interest at all in the land, they were the sole owners thereof, while *per contra,* if the parties who filed the petition in question

have any interest at all in the land, they, along with Louisiana
Johnson (granddaughter of Fannie Cypress) are the sole
owners. In other words, there is no such relationship between
these two sets of claimants as that there can be, or could ever
have been, any community of interest between or among them.

The circuit court, by the decree from which this appeal was
allowed, sustained the claim of the petitioners, set aside the
sales and deeds to Ely, King and Ricks above mentioned, held
again that a partition of the land could not be made in kind,
directed a new sale for the benefit of the petitioners, and ordered
that King pay for timber which he had cut from the land, and
that he and Ricks pay rent for the land during the time they
had held it.

The appellants are the original parties to the suit, with the
exception of Louisiana Johnson and Alice Roberts, and with
the addition of King and Ricks, and their principal conten-
tions, as made in the lower court and repeated here, are (1)
that the court was without jurisdiction to entertain the petition
on its merits; (2) that the decree confirming the sale to Ely
and directing a deed was a final decree which could only be
reviewed within a year, and (3) that upon the merits, the
evidence shows that Bob Bailey was the sole next of kin of
Cheeseman Hargrave, and that the petitioners never had any
lawful claim to the land or any part thereof.

In our view of the case it will not be necessary to discuss
any but the first of these assignments of error, being of opinion
that the case is controlled by the decision of this court in *Litz*
v. *Rowe,* 117 Va. 752, 86 S. E. 155. The circuit court was
without jurisdiction to determine in this cause the question of
title between these two wholly distinct and hostile claims. It
was a question for a court of law, and did not arise in such
manner as to bring it within the meaning of the provision of
section 2562 of the Code permitting courts of equity to "take
cognizance of all questions of law affecting the legal title that
may arise in any proceedings, as well between tenants in

common, joint tenants, and coparceners as others." The question is simply one of an adverse claim to the whole of the land, in no way connected with, related to, or affecting, the source of title under which the parties interested in the original partition suit claimed to be joint owners; and if the statute could be construed to give jurisdiction to a court of equity in such case, then it means that a new remedy has been substituted ·for the action of ejectment in every case where there is an independent adverse claim to land about to be partitioned. This, in our opinion, was not the purpose of the statute. In order to give the court jurisdiction under section 2562 of a "question of law affecting the legal title," the question must arise as an incident to a partition and must be such as to require decision before the partition can be satisfactorily made as between the persons at whose instance or in whose behalf the partition is being made. An independent hostile claim going to the whole property involved, and denying *in toto* and *ab initio* the title of the parties claiming the joint ownership of the land, cannot be set up and adjudicated in a partition suit brought by the latter. This would permit an adverse claimant in such a case to implead in equity parties to a partition suit in such a way as to substitute the partition suit for an action of ejectment, and this result can only follow where the adverse claimant's title is not in its origin hostile to that of the other parties to the suit, as for example, a title derived from a joint owner with the plaintiff in the partition suit. See *Pillow* v. *Southwest, &c. Imp. Co.,* 92 Va. 144, 148, 23 S. E. 32, 53 Am. St. Rep. 804; *Preston* v. *Mining Co.,* 107 Va. 245, 57 S. E. 651; *Morgan* v. *Haley,* 107 Va. 331, 333, 58 S. E. 564, 13 L. R. A. (N. S.) 732, 122 Am. St. Rep. 846, 13 Ann. Cas. 204.

Counsel for appellees call attention to the fact that the amendment which added to section 2562 of the Code the words "as well between tenants in common, joint tenants and coparceners *as others,*" was made since the decision in *Pillow* v. *Southwest Imp. Co., supra,* but it is also to be noted that the

*Morgan* and *Preston Cases, supra,* were decided subsequent to that amendment, and that both of them recognize and reiterate the principle announced in the *Pillow Case.* There has been, so far as we recall, no judicial interpretation of this amendment, but in our opinion neither the original statute nor the amendment was ever intended to have the effect allowed in the decree under review.

To grant the relief, or any of it, prayed for in the petition would be for a court of equity to try title to land in a case where neither the pleadings nor the facts are such as to confer jurisdiction. *Litz* v. *Rowe, supra,* and authorities therein cited.

The decree complained of will be reversed and annulled, and this court will enter a decree dismissing the petition and awarding costs to the appellants.

*Reversed.*