## MARX *v.* HANTHORN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF OREGON.

No. 123. Argued January 19, 20, 1893. — Decided March 6, 1893.

To make a tax sale valid, observance of every safeguard to the owner created by statute is imperatively necessary.

When not modified by statute, the burden of proof is on the holder of a tax deed to maintain his title, when questioned, by showing that the provisions of the statute have been complied with.

It is competent for a legislature to declare that a tax deed shall be *prima facie* evidence, not only of the regularity of the sale, but also of all prior proceedings, and of title in the purchaser; but as the legislature cannot deprive one of his property by making his adversary's claim to it conclu-

sive of its own validity, it cannot make a tax deed conclusive evidence of the holder's title to the land.

The reasonable meaning of the Oregon statutes regulating notices and sales of property for taxes, (Gen. Laws, ed. 1874, 767, §§ 90, 93; Hill's Ann. Laws, 1309,) is that such notice and advertisement should give the correct names of those whose property is to be sold.

Notice in Oregon that the property of Ida J. Hawthorn was to be sold was not only not notice that the property of Ida J. Hanthorn was to be sold, but was actually misleading, and such want of notice or misleading notice vitiated the sale.

THIS action was brought by the plaintiff, a subject of the Emperor of Germany, against the defendant, a citizen of Oregon, to recover the possession of lots 3 and 4, in block E, in the town of Portland.

The action was originally brought against B. Campbell, the party in possession, who, having answered that he was in possession as the tenant of Ida J. Hanthorn, the latter was substituted for him as defendant.

It is alleged in the complaint that the plaintiff is the owner of the premises, and that the defendant wrongfully withholds from him the possession thereof.

The answer contains a denial of the allegations of the complaint and a plea of title in the defendant, with a right to the possession, and the replication denies the plea.

The defendant claims the premises under a deed of August 28, 1878, from W. W. Chapman and Margaret F., his wife, the latter being the patentee of the United States, under the donation act of 1850, of a tract of land including said block E. The plaintiff claims under two deeds, one from ex-Sheriff Sears of July 29, and the other from Sheriff Jordan of July 30, 1886, each purporting to be made in pursuance of a sale of the property for taxes by the former on June 30, 1884.

By a stipulation filed in the cause it is admitted that the defendant was the owner in fee of the premises at the time of the assessment and sale of the same for taxes, and that she is still such owner, unless such sale and the conveyance thereon had the effect to pass the title to the purchaser thereat, and that the property is worth $6000.

The case was tried by the court without the intervention

of a jury, and on the trial the proceedings, constituting the
assessment, levy of taxes, and the sale of the property and
the conveyance thereon, were received in evidence, subject
to objection for want of competency and materiality.   From
these it appears that on August 27, 1883, the premises were
listed by the assessor of Multnomah County, on the assess-
ment-roll thereof, for taxation in that year as the property
of Ida F. Hanthorn, and valued at $2200 ; that on October
17, 1883, the entry on the assessment-roll concerning said
property was transcribed on to the tax-roll of said county by
the clerk thereof, and on the same day the taxes for school,
state and county purposes, amounting to $34.32, were levied
on said property and extended on said tax-roll by the county
court of said county, and the sheriff thereof commanded, by
a warrant endorsed thereon, signed by the county clerk and
sealed with the seal of said court, to collect said taxes by
demanding payment of the same and making sale of the
goods and chattels of the persons charged therewith ; that
the sheriff, George C. Sears, to whom said warrant was
directed, having returned that the tax levied on said prop-
erty was unpaid and delinquent, the latter was, on April 22,
1884, entered on the delinquent tax-roll of said county by the
clerk thereof as the property of Ida F. Hawthorne, and a war-
rant endorsed thereon, signed by said clerk and sealed with
the seal of said county, commanding said sheriff to levy on
the goods of the delinquent taxpayer, and in default thereof
on the real property mentioned in said tax-list, or sufficient
thereof to satisfy said taxes, charges and expenses ; that
afterward said sheriff returned that he received said delin-
quent tax-list and warrant on April 22, 1884, and, in pursu-
ance thereof and in default of personal property, he levied
on said lots three and four, and advertised and sold the same
on June 18, 1884, as the property of Ida J. Hawthorn, to J. E.
Bennett for $37.51, the amount of said delinquent tax and
costs and expenses thereon ; that on July 29, 1886, George C.
Sears, as ex-sheriff of said Multnomah County, executed and
delivered to said Bennett a deed for the premises, in which
the proceedings concerning the assessment of said property,

the levy of the taxes thereon, the non-payment and delin-quency of the same, and the sale of the property therefor were substantially recited, except that it does not thereby appear that the premises were entered on the delinquent tax-list or advertised or sold as the property of Ida F. Haw-thorn, but as that of Ida F. Hanthorn; and that on July 30, 1886, Thomas A. Jordan, as sheriff of said Multnomah County, by A. W. Witherell, deputy, executed and delivered to said Bennett a deed of the premises, containing the same recitals as the one from Sears. Each deed was acknowledged on the day of its execution and afterwards admitted to record. The original Jordan deed was put in evidence and also a certified copy of the record; but the execution of the original was not otherwise proved, and it is contended that the acknowleag-ment is not legal, and that therefore it cannot be read in evi-dence without direct proof of its execution.

On July 31, 1886, Bennett and his wife, Alvira F., in con-sideration of $500, as recited in the deed, quitclaimed the premises to the plaintiff.

The statute of the State of Oregon, in relation to the validity and effect of tax deeds, provides as follows:

" Sec. 90. After expiration of two years from the date of such certificate, if no redemption shall have been made, the sheriff shall execute to the purchaser, his heirs or assigns, a deed of conveyance, reciting or stating a description of the property sold, the amount bid, the year in which the tax was levied, that the tax was unpaid at the time of the sale, and that no redemption has been made; and such deed shall operate to convey a legal and equitable title to the purchaser, sold in fee simple to the grantee named in the deed; and upon the delivery of such deed all the proceedings required or directed by law, in relation to the levy, assessment and collection of the taxes, and the sale of the property, shall be presumed regular, and to have been had and done in accord-. ance with law; and such deed shall be *prima facie* evidence of title in the grantee, and such presumption and such *prima facie* shall not be disputed or avoided except by proof of either (1) fraud in the assessment or collection of the tax;

(2) payment of the tax before sale or redemption after the sale; (3) that the payment or redemption was prevented by the fraud of the purchaser; (4) that the property was sold for taxes for which the owner of the property at the time of the sale was not liable, and that no part of the tax was levied or assessed upon the property sold."

"SEC. 93. All sales made for delinquent taxes . . . must be made as is otherwise made in selling real estate upon an execution, at the court-house door between the hours of ten o'clock A.M. and four P.M., in the daytime; and notice of such sale shall be given in some public newspaper, published in the county where the property is situated, or in case no paper is published in the county, then in the paper published nearest the place of sale, and in general circulation in the county, by advertisement for four consecutive weeks before such sale, describing accurately the lots or lands to be sold, and that they are to be sold for taxes due thereon.". General Laws of Oregon, c. 57, p. 767, ed. 1874.

On March 23, 1887, the defendant, Ida J. Hanthorn, commenced a suit in equity in the Circuit Court of the United States against E. Márx, the plaintiff in this suit, for the purpose of determining his claim to the premises, alleging that the tax deed under which the plaintiff claims title to the same was void, for certain reasons, and brought into court and tendered him the sum of $50.60 in payment of what was due him thereon.

On February 21, 1887, after the present case had been submitted to the court below for decision, the legislature of Oregon amended said section 90 of the tax law so as to make a tax deed only *prima facie* evidence of title in the grantee, and requiring the party claiming to be the owner as against the holder of the tax title to tender and pay into court, with his answer, the amount of the taxes for which the land was sold, with interest thereon at the rate of 20 per cent per annum from the sale to the date of the deed, together with any taxes the purchaser may have paid, with interest thereon, for the benefit of the holder of the tax deed, his heirs or assigns, in case the same should be held invalid.

The court below found and adjudged that the alleged tax sale was illegal and void; that the plaintiff was not entitled to recover; that the defendant was the owner of the premises and entitled to the possession thereof, 30 Fed. Rep. 579; and from this judgment the plaintiff brought his writ of error to this court.

*Mr. John H. Mitchell* and *Mr. John M. Gearin* for plaintiff in error.

The names "Hawthorn" and "Hanthorn" are so nearly alike that the rule *idem sonans* applies. This rule may be thus stated: Absolute accuracy in spelling names is not required in legal documents or proceedings, either civil or criminal; but if the name as spelled in the document, though different from the correct spelling thereof, conveys to the ear when pronounced according to commonly accepted methods a sound practically identical with the sound of the correct name as commonly pronounced, the name as thus given is a sufficient designation of the individual referred to, and no advantage can be taken of the clerical error. *State* v. *Havely*, 21 Missouri, 498, (Havely *and* Haverly); *Robson* v. *Thomas*, 55 Missouri, 581, (Mathews *and* Mather); *State* v. *Scurry*, 3 Rich, (Law,) 68, (Anthorn *and* Antrum); *McLaughlin* v. *State*, 52 Indiana, 476, (McLaughlin *and* McGloflin); *Williams* v. *Ogle*, 2 Strange, 889, (Segrave *and* Seagrave); *Ward* v. *The State*, 28 Alabama, 53, (Chambles *and* Chambless); *State* v. *Hutson*, 15 Missouri, 512, (Hutson *and* Hudson); *Fletcher* v. *Conly*, 2 Greene, (Iowa,) 88, (Conly *and* Conolly); *Gahan* v. *The People*, 58 Illinois, 160, (Danner *and* Dannaher); *Colburn* v. *Bancroft*, 23 Pick. 57, (Coburn *and* Colburn); *Commonwealth* v. *Jennings*, 121 Mass. 47, (Gigger *and* Jiger); *Tibbetts* v. *Kiah*, 2 N. H. 557, (Kiah *and* Currier); *The State* v. *Timmens*, 4 Minnesota, 325, (Fourai *and* Forrest).

But conceding for the sake of this argument that Hanthorn is not sufficiently like Hawthorn to warrant us in invoking the rule of *idem sonans*, appellant insists that the error, if

error there be, in the notice of sale is immaterial and does
not avoid the deed. The name of the owner or the person
against whom the tax is assessed is not a part of the statu-
tory notice. The statute is complied with if the lots or lands
are accurately described. And, even if the statute had re-
quired that the name of the owner should be inserted in the
published notice, the failure to do so would not avoid the
sale. A statutory provision requiring notice of sale on exe-
cution to be given is directory. If a defective notice is given
it does not affect the title of the purchaser.

*Smith* v. *Randall*, 6 California, 47; *S. C.* 65 Am. Dec. 475;
*Harvey* v. *Fisk*, 9 California, 93; *Wood* v. *Moorehouse*, 45
N. Y. 368; *Hudgens* v. *Jackson*, 51 Alabama, 514; *Lenox* v.
*Clarke*, 52 Missouri, 115; *Hendrick* v. *Davis*, 27 Georgia, 167;
*S. C.* 73 Am. Dec. 726; *Curd* v. *Lackland*, 49 Missouri, 451;
*Perkins* v. *Spaulding*, 2 Michigan, 157; *Osgood* v. *Blackmore*,
59 Illinois, 261; *Jackson* v. *Spink*, 59 Illinois, 404; *McRea* v.
*Davneir*, 8 Oregon, 63.

Legislative acts intended to cure and preclude inquiry into
defective attempts to exercise the power of taxation have
been enacted in many of the States. The power to pass such
laws has been uniformly sustained. In *Williams* v. *Albany*,
122 U. S. 154; *Mattingly* v. *District of Columbia*, 97 U. S.
687; *Wright* v. *Young*, 6 Oregon, 87; *Mathews* v. *Eddy*, 4
Oregon, 225; *Dolph* v. *Barney*, 5 Oregon, 191; *McRae* v.
*Davneir*, 8 Oregon, 63.

The proceedings leading up to the tax sale in this case,
including the Sheriff's advertisement of the delinquent tax
list, were in all respects regular. But even if they were irreg-
ular in the matter of the publication of the delinquent tax
list, the deed precluded inquiry into that fact, and the con-
clusive presumption provided for by statute operated in favor
of plaintiff in error.

The tax sale in this case took place July 18, 1884. The
tax deed was executed July 29, 1886. Complaint was filed
August 3, 1886, and the case tried October 22, 1886. The
decision of the Court was filed April 22, 1887.

On March 23, 1887, the defendant in error began a suit in

equity in the court below against plaintiff in error, setting up this statute and seeking relief under it. That suit, as appears from the opinion of the court in this case, was decided adversely to defendant in error, and no appeal has ever been taken from such decision. Judge Deady, in passing upon the question, says: "I have considered whether this section 90, as amended, is applicable as a rule of evidence to the case under consideration. When the State sold these lots to Bennett it entered into a contract with him the obligation of which it cannot impair by any subsequent legislation.".

If any claim should be made here that defendant in error is benefited by the act of 1887, we answer that such cannot be the case, for two reasons :

(1) This act does not operate on plaintiff's tax deed. It does not purport to, and cannot if it did, affect a deed made before its passage. *Von Hoffman* v. *Quincy,* 4 Wall. 535; *Murray* v. *Charleston,* 96 U. S. 432; *Green* v. *Biddle,* 8 Wheat. 1; *Ogden* v. *Saunders,* 12 Wheat. 213; *Walker* v. *Whitehead,* 16 Wall. 314; *Sturges* v. *Crowninshield,* 4 Wheat. 122; *Edwards* v. *Kearzey,* 96 U. S. 595; *Green* v. *Barry,* 15 Wall. 610.

(2) But conceding that this law of 1887 is constitutional and applicable to the present case, of what benefit can it be to the defendant in error ? It substitutes a *prima facie* presumption for a *conclusive* presumption. But a *prima facie* presumption in the absence of attack is as good as a conclusive presumption. No attack was attempted to be made upon the regularity of these proceedings, except as to the publication of the *name* in the delinquent list — something not required by the statute. The record is all here, and it is not pretended that any irregularity can be shown but this. And the authorities hereinbefore referred to conclusively show that this, even if open to attack, would not vitiate the sale. On the record as made we need no presumption, either conclusive or *prima facie.*

*Mr. J. N. Dolph,* (with whom was *Mr. George H. Durham* on the brief,) for defendant in error.

Mr. Justice Shiras, after stating the case, delivered the opinion of the court.

As there must be express statutory authority for selling lands for taxes, and as such sale is in the nature of an *ex parte* proceeding, there must be, in order to make out a valid title, a substantial compliance with the provisions of the law authorizing the sale. A statutory power, to be validly executed, must be executed according to the statutory directions. It is, no doubt, true that there may be provisions in tax laws that are made in the interest of the public, and which do not concern the taxpayer; and a failure to punctiliously observe them may furnish him with no just ground of complaint. But the well established rule is, as above stated, that observance of every safeguard to the owner created by the statute is imperatively necessary. So, too, it is the rule, when not modified by statute, that the burthen of proof is on the holder of a tax deed to maintain his title by affirmatively showing that the provisions of the law have been complied with.

We do not perceive that these general rules have been materially modified by the statutes of Oregon, to which our attention has been called. It is true that, as to certain preliminary and directory conditions of tax sales, the Oregon statute, dated December 18, 1865, and cited as section 90 of the general laws, declares that upon delivery of a tax deed "all the proceedings required or directed by law in relation to the levy, assessment and collection of the taxes and the sale of the property shall be presumed regular, and to have been had and done in accordance with law; and such deed shall be *prima facie* evidence of title in the grantee, and such presumption and such *prima facie* shall not be disputed or avoided, except by proof of either; (1) fraud in the assessment or collection of the tax; (2) payment of the tax before sale, or redemption after sale; (3) that the payment or redemption was prevented by the fraud of the purchaser; (4) that the property was sold for taxes for which the owner of the property at the time of the sale was not liable, and that no part of the tax was levied or assessed upon the property sold." But

by the amendatory act of February 21, 1887, (2 Hill's Annotated Laws, 1309, ed. 1892,) the provision respecting the evidential effect of the deed was changed so as to read as follows: "Upon the delivery of such deed all the proceedings required or directed by law in relation to the levy, assessment and collection of the taxes, and the sale of the property, shall be presumed regular, and such deed shall be *prima facie* evidence of title in the grantee."

At the trial the plaintiff, the holder of the tax deed, was given the benefit of this legislation, as his deed was treated as making out a *prima facie* right to recover, and the evidence upon which the questions in the case arose was put in by the defendant.

It was, indeed, contended by the plaintiff in the court below and likewise in this court, that the irregularities or disregard of law which, in the opinion of that court, invalidated the tax sale, had to do with proceedings which the act of 1865 protected from inquiry, and in respect to which it made the tax deed absolute evidence; and that, therefore, the subsequent. legislation declaring the effect of the tax deed, as evidence, to be merely *prima facie*, was unconstitutional and ineffective so far as the plaintiff was concerned, he having received his deed before the enactment of the latter law.

Courts of high authority have held that mere rules of evidence do not form part of contracts entered into while they are in force, and that it is competent for the legislature to, from time to time, change the rules of evidence, and to make such change applicable to existing causes of action. *Rich* v. *Flanders*, 39 N. H. 304; *Howard* v. *Moot*, 64 N. Y. 262; *Kendall* v. *Kingston*, 5 Mass. 524; *Commonwealth* v. *Williams*, 6 Gray, 1; *Goshen* v. *Richmond*, 4 Allen, 458.

"It must be evident that a *right to have one's controversies determined by existing rules of evidence is not a vested right.* These rules pertain to the remedies which the State provides for its citizens; and, generally, in legal contemplation, they neither enter into and constitute a part of any contract, nor can be regarded as being of the essence of any right which a party may seek to enforce. Like other rules affecting the

remedy, they must, therefore, at all times be subject to modification and control by the legislature; and the changes which are enacted may lawfully be made applicable to existing causes of action, even in those States in which retrospective laws are forbidden." Cooley's Constitutional Limitations, 457, 4th ed. 1878.

But as the court below held that, if and so far as the legislature had the power to and did make the tax deed conclusive evidence of title, the legislature had no power, as against a purchaser under that law, to make the deed, by a subsequent enactment, *prima facie* only, it is not necessary for this court to consider whether we can adopt that view of the question.

The court held that even if the act of 1887 could not constitutionally avail, as against the plaintiff, to change the evidential effect of the tax deed, yet that the act of 1865 could not operate to prevent the defendant from showing that she had no notice, actual or constructive, of the tax sale. *Forster* v. *Forster*, 129 Mass. 559.

The view of the court was that notice of the sale was an essential part of the proceedings; that the legislature did not have the power to make the tax deed conclusive evidence of the fact; that there must be an opportunity given for investigation and trial; and that the legislature cannot, under the pretence of prescribing rules of evidence, preclude a party from making proof of his right by arbitrarily and unreasonably declaring that on some particular circumstance being shown by the other party the controversy is closed by a conclusive presumption in favor of the latter.

Without going at length into the discussion of a subject so often considered, we think the conclusion reached by the courts generally may be stated as follows: It is competent for the legislature to declare that a tax deed shall be *prima facie* evidence not only of the regularity of the sale, but of all prior proceedings, and of title in the purchaser, but that the legislature cannot deprive one of his property by making his adversary's claim to it, whatever that claim may be, conclusive of its own validity, and it cannot, therefore, make the tax deed conclusive evidence of the holder's title to the land.

Mr. Cooley sums up his examination of the cases on this

subject in the following statement: "That a tax deed can be made conclusive evidence of title in the grantee we think is more than doubtful. The attempt is a plain violation of the great principle of Magna Charta, which has been incorporated in our bill of rights, and, if successful, would in many cases deprive the citizen of his property by proceedings absolutely without warrant of law or of justice; it is not in the power of any American legislature to deprive one of his property by making his adversary's claim to it, whatever that claim may be, conclusive of its own validity. It cannot, therefore, make the tax deed conclusive evidence of the holder's title to the land, or of the possible jurisdictional facts which would make out title. But the legislature might doubtless make the deed conclusive evidence of . . . everything except the essentials." Cooley on Taxation, 521, 5th ed. 1886.

This brings us to a consideration of the matters put in evidence by the defendant, going to overthrow the *prima facie* presumptions created by the tax deed. There were two. The land in question was admitted to belong to Ida J. Hanthorn, and that fact was found by the court below; but on the delinquent tax roll the property is alleged to belong to Ida F. Hawthorne, and it further appears by the return of the sheriff that the property was advertised and sold as the property of Ida F. Hawthorn.

It was the opinion of the court below that due and reasonable notice of the sale of property for a delinquent tax is necessary for the validity of such sale, and that the fair meaning of the Oregon statutes regulating judicial sales and sales for taxes is that the name of the owner of the lands to be sold shall appear in the notice of sale; and the court was further of the opinion that to give notice that the property of Ida F. Hawthorn was to be sold was not only not notice that the property of Ida J. Hanthorn was to be sold, but was actually misleading, and that such want of notice or misleading notice vitiated the sale.

It is contended, on behalf of the plaintiff, that the statute does not require that the notice should name the owner or name him correctly; that it is sufficient to correctly describe

the property which is to be sold; and that, at any rate, the notice in the present case was sufficient within the meaning of the rule of *idem sonans.*

We agree with the court below in thinking that the reasonable meaning of the statutes regulating notices and sales of property for taxes, is that such notice and advertisement should give the correct names of those whose property is to be sold. While the statutes do not in terms say that the names of the owners should be published, yet such would seem to be the fair presumption, and the present case shows that such was the construction adopted by the officials, as they did name, though incorrectly, an owner in the notice.

These questions have been determined, so far as the laws and constitution of Oregon are concerned, by a recent decision of the Supreme Court of that State in the case of *Strode* v. *Washer*, 17 Oregon, 50. In that case it is held that in an action to determine the title to land claimed under a tax deed, evidence can be received to show that the assessment claimed to have been made was void, in that the property in dispute had been assessed with other property not owned by the defendants, and the value of all fixed at a gross sum, and that it was error to exclude such evidence, even under a statute making a tax deed evidence of the regularity of an assessment; and it was further held that the amendment of 1887, changing that feature of the act of 1865 which made a tax deed conclusive evidence of the regularity of the levy, assessment, collection of taxes, and sale of the property, did not impair the obligation of contracts as to purchases made prior to the amendment, but simply changed the rule of evidence.

. This decision was not made till after the trial of the present case in the Circuit Court of the United States; but, in the absence of any previous decision by the Supreme Court of Oregon to the contrary, we regard it as a conclusive construction of the meaning and effect of the state statutes in question. We also concur with the court below in thinking that, by no reasonable application of the rule of *idem sonans,* can the name of Ida J. Hawthorn be deemed equivalent to that of Ida J. Hanthorn.

Another particular in which, it is claimed on behalf of the defendant, there was a disregard of law invalidating the sale, is found in the assessment of the two lots 3 and 4 in block E as one parcel. The statute prescribes that the assessor shall set down in the assessment, in separate columns, "a description of each tract or parcel of land to be taxed, specifying, under separate heads, the township, &c., or, if divided into lots and blocks, then the number of the lot and block;" and the contention is that grouping the lots and fixing the valuation in a gross sum was not a valid assessment. Such a question was considered by the Supreme Court of Oregon in the case of *Strode* v. *Washer*, heretofore cited. There an assessment was held to be a nullity which included several lots of land belonging to different owners in one valuation; and the court said "what the effect would be where the lots so assessed all belong to the same party, we express no opinion."

The effect of this irregularity does not seem to have been considered by the court below, and in view of the expression of the Supreme Court of the State, just quoted, withholding any opinion as to the effect of this defective mode of assessment, we do not feel disposed to base our decision upon it.

As, however, we think that the court below did not err in permitting the defendant to impugn the tax title by showing that the name of the owner was wrongly given in the delinquent tax roll, and in the notice and publication, and in holding that the sale was thereby invalidated, it follows that its judgment should be

*Affirmed.*

Mr. Justice Brewer did not sit in this case, nor take any part in its decision.