# Richmond.

## PAYNE V. BUENA VISTA EXTRACT CO.

### January 16, 1919.

1. QUIETING TITLE—*Jurisdiction—Complainant in Possession.*—
Where complainant in a bill *quia timet* has the legal title and
actual possession of the land in dispute, he may maintain his
suit in equity to remove an alleged cloud upon the title, inde-
pendent of statute, because, in such case, complainant would
have no remedy at law by action of ejectment. In the instant
case, however, complainant did not have such actual possession.

2. QUIETING TITLE—*Jurisdiction—Complainant Having Seizin Un-
disturbed by Possession of Another.*—Where the complainant
in a bill *quia timet* has the legal seizin of the land undisturbed
by any actual possession of another, he may maintain his suit
in equity under section 2726, Code of 1904, against a "person
claiming title thereto." But in the instant case the legal seizin
of complainant was disturbed by the actual possession of an-
other. Legal seizin will not support the equity jurisdiction to
remove clouds from title where the plaintiff is not in actual
possession, unless the possession be vacant, and the rule of the
common law that the entry and possession of a vendee is tolled
as against his vendor and those in privity of estate with the
latter does not differentiate the instant case. For the position
of the complainant throughout this litigation has been that it
denied the existence of any contract of sale to the party in
possession. Therefore, it could not have taken the position in a
bill *quia timet* that the party in possession was a vendee of its
predecessor in title and that for that reason its legal seizin
was undisturbed. Hence, the complainant could not have main-
tained a suit *quia timet* in the premises on the jurisdictional
ground that it had undisturbed legal seizin of the land.

3. QUIETING TITLE—*Jurisdiction—White Act.*—Under the White act
(Acts 1912, pp. 76-8, 4 Pollard's Code, section 3058, amending
section 3058, Code of 1904), jurisdiction is conferred upon
circuit and corporation courts on the chancery side in all cases
of bills *quia timet* where the plaintiff is *not in possession* of the
real estate affected, in suits instituted in one of the courts men-
tioned, where that court would have had jurisdiction of the

case, as the law stood prior to the act, if the plaintiff had been *in possession* of such real estate at the time the suit was brought; in other words, the statute confers such jurisdiction in such a suit in all cases where the court, but for the act, would, under the law as it stood aforetime, have to dismiss the suit on the sole ground that the plaintiff was not in possession of the real estate affected at the time the suit was instituted. Such a dismissal of such a suit on such ground was plainly what the act, sought to prevent.

4. QUIETING TITLE—*Jurisdiction—Ground of Jurisdiction.*—The ground upon which the jurisdiction of equity to remove clouds by bills *quia timet* rests, is that injury from the continued existence of the cloud upon the title is reasonably apprehended by the plaintiff, and that being in possession of the real estate affected he cannot maintain an action of ejectment to try the title, and, hence, he is, in such case, without any remedy whatsoever at law, and the injury would be irreparable but for the remedy in equity.

5. QUIETING TITLE—*Jurisdiction—Discretion of Court.*—The exercise of the jurisdiction to remove a cloud upon title by a bill *quia timet* is undoubtedly in the sound discretion of the court, when the reality of the apprehended danger of injury from the alleged cloud upon the title is in question, but not otherwise. If, as in the instant cause, there be no doubt upon the point of the reality of such apprehended danger—if it be a real cloud upon the title which exists—and the plaintiff has the legal title to the land and the actual possession of it, the courts in every such case have the jurisdiction under consideration and had it prior to the White act.

6. QUIETING TITLE—*Jurisdiction—Complainant Not in Possession— Constitutional Law.*—As the power of the legislature over the subject of the jurisdiction of courts of law and equity is confessedly plenary, the argument against the White act grounded on the alleged ill effects of the act must be addressed to the legislature and not to the courts.

7. FORMER ADJUDICATION OR RES ADJUDICATA—*Order Striking Case From Docket—Five Year Rule.*—An order of court entered under what is generally designated as the five year rule of the statute (section 3312, of the Code of 1904) directing that a case "be stricken from the docket," does not operate as a bar or estoppel to the institution of a subsequent suit for the same cause. By the express terms of the statute, the order operated upon the pendency of the suit or action, and the authority thereby given the court extends no farther than to "order it to be struck from the docket." And as to what shall be the effect of such order, the statute itself provides that "it" (the case or cause) "shall thereby be discontinued."

38

8.  FORMER ADJUDICATION OR RES ADJUDICATA—*Order Striking Case From Docket—Discontinuance or Non-Suit.*—The term "discontinuance" has a well settled meaning in the law and has had from a very ancient time. A discontinuance is "in effect a non-suit," and the effect of a non-suit is simply to put an end to the present action, but is no bar to a subsequent action for the same cause.

9.  FORMER ADJUDICATION OR RES ADJUDICATA—*Judgment on the Merits—Retraxit—Dismissal.*—To render the decree or order in a former proceeding a bar to a subsequent suit or action on the same cause of action by the same parties or their privies, such final decree or order must have been entered "on the merits." An order of retraxit goes to the merits of a case and bars another action for the same cause. The mere dismissal of a case is not a retraxit but stands on the same footing as a non-suit and does not bar another action for the same cause.

10. FORMER ADJUDICATION OR RES ADJUDICATA—*Judgment on the Merits—Section 2756, Code of 1904.*—The judgment referred to in section 2756 of the Code of 1904 is one on the merits.

11. RECORDING ACTS—*Bona Fide Purchaser—Possession as Notice—Code of 1887, Section 2465.*—Code of 1887, section 2465, was as follows: "Every such contract in writing * * * shall be void as to subsequent purchasers for valuable consideration without notice, * * * until and except from the time that it is duly admitted to record in the county or corporation wherein the property embraced in such contract * * * may be." This was amended by acts of 1895-6, p. 842, by the addition of the following language: "Provided, that possession of any estate or term without notice or other evidence of title, shall not be notice to said subsequent purchasers for valuable consideration." This proviso was omitted from the amendment of the statute by Acts 1897-8, p. 834, but was restored by the act amending the same statute in Acts 1899-1900, p. 89.

*Held:* That the act as amended affected contracts in existence prior to its enactment; and that as thus construed it is not unconstitutional as divesting parties in possession of vested rights of property.

Appeal from a decree of the Circuit Court of city of Lynchburg. Decree for complainant. Defendant appeals.

*Affirmed.*

This suit in equity was instituted in the court below by the appellee, which will be hereinafter designated the Extract Company, against the appellant, who will be hereinafter designated as Payne, by a bill *quia timet* to remove an alleged cloud upon the title to a certain tract of unin- closed, wild mountain land, of certain boundaries supposed to contain over three hundred acres, which will be hereinafter designated the 300 acre tract.

The Extract Company and Payne both claim title to the 300 acre tract as derived from a common source, namely, Henry Loving, executor of John Thompson, deceased, hereinafter designated, Loving.

Payne's claim of title rests upon a deed to him from A. W. Fitzgerald and wife of date May 19, 1905, duly recorded May 23, 1915, conveying the 300 acre tract, and upon an alleged executory contract in writing between Loving and A. W. Fitzgerald and his father, evidencing a purchase by the two latter from Loving of a tract of land of definite boundaries but of uncertain acreage, hereinafter designated the 375 acre tract, which included the said 300 acre tract within its bounds. There is evidence in the cause that A. W. Fitzgerald was let into actual pessession, under said contract, of a part of such 375 acre tract outside the bounds of the 300 acre parcel thereof and that he from time to time exercised acts of ownership over the 300 acre tract, such as the cutting of timber therefrom, from some time in 1880 until the execution of said deed to Payne, and, indeed, afterwards down to the institution of the suit now before us, and after that, as will be hereinafter again mentioned, claiming the equitable title to the whole of this land under said contract as color of title.

There was another claim of title by A. W. Fitzgerald to a portion of said 375 acre tract, to-wit, a parcel of 43 acres of it, not embraced in said 300 acre parcel, which it is not material, however, to further mention.

There is much conflict in the evidence in the cause over the questions of fact mentioned in the preceding paragraph, but it will be assumed that the preponderance of the evidence shows that the contract mentioned existed; that a valuable consideration therefor existed (consisting of a giving up by the Fitzgeralds to Loving of the possession of a parcel of land as to which there was a controversy between such parties) and that other circumstances existed not material to be mentioned which made the contract valid and binding upon Loving and upon all subsequent purchasers from him with actual or constructive notice of such contract; and that A. W. Fitzgerald was in the actual possession aforesaid of a part of the 375 acre tract of land claiming the right to hold possession of the whole of it under said contract as color of title, as aforesaid, at the time that the Extract Company first purchased and obtained its deed to the land hereinafter more particularly mentioned, and at the time the latter obtained its second deed to the same land, as will be also hereinafter more particularly set forth.

Payne makes no claim of title to said 300 acre tract of land as acquired by adverse possession of himself or of those under whom he claims title thereto.

The contract aforesaid was never recorded.

The Extract Company as a complete purchaser for value thereof derived title to a larger tract of land, which included in its boundaries the said 375 acre tract, by successive deeds, as follows—(the full names of some grantors and grantees being omitted, as immaterial) :

Loving to Rittenhouse, of date October 16, 1883;

Rittenhouse to Whelen, of date October 19, 1883;

Whelen to Buena Vista Extract Co., December 9, 1903;

Buena Vista Extract Co., to Leas & McVitty, December 14, 1906;

Leas & McVitty back to Buena Vista Extract Co., April 1, 1910.

The testimony in the cause of A. W. Fitzgerald is that Whelen, at the time of the purchase by and the conveyance aforesaid to the latter had no notice of Fitzgerald's claim of equitable title. But according to the preponderance of the evidence in the cause Whelen was afterwards informed of such claim and, as shown by the record, he instituted an action of ejectment against A. W. Fitzgerald to recover said 375 acre tract of land by declaration filed at the 2nd January rules 1901, with a statement that *mesne* profits were demanded, for the unlawful use and occupation of such land for five years next preceding the filing of the statement, of a certain sum per year, and also certain damages for shingles, tan bark, locust pins and other timber alleged to have been unlawfully taken from the land. The defendant entered a plea of not guilty. On July 31, 1908, the following order was entered in that case:

"*Alfred Whelen* v. *A. W. Fitzgerald*—in ejectment.

"It appearing to the court that no order has been entered in this case for more than five years, upon motion of the defendant it is ordered that it be stricken from the docket."

On December 10, 1908, the following other order was entered by the same court in which said action of ejectment was instituted as aforesaid:

"*Alfred Whelen* v. *A. W. Fitzgerald*.

"This day came the Buena Vista Company by its attorneys and, representing to the court that it has purchased the title of the plaintiff to the lands in litigation here, who has conveyed the same to said Buena Vista Extract Company by deed, moved the court that this cause, which, by order entered at the July term, 1908, was stricken from the docket, no order therein having been entered for more than

five years, be reinstated and hereafter proceeded in in the name of said Buena Vista Extract Company.   And counsel for defendant being absent from court it is ordered that this motion be docketed and continued to the first day of the next term."

On July 24, 1916, after the cause before us was instituted, the following further order was entered by the court last named:

"*Alfred Whelen* v. *A. W. Fitzgerald*—in ejectment.

"On motion of Buena Vista Extract Company, by counsel, the motion heretofore (on December 10, 1908) made by said Buena Vista Extract Company that this cause be reinstated upon the docket and be hereinafter proceeded in in its name, which was then docketed and continued, is now dismissed."

The cause before us was instituted on November 4, 1915. At that time the plaintiff in such suit was not in actual possession of said 300 acre tract or any part of it.   It was not in the actual occupancy even of any part of its larger tract of land, so far as the record discloses.   The only act of possession of the Extract Company shown by the record consisted in the patrol of its larger body of land, including the 300 acre tract, by rangers who passed over parts of such land at intervals of several months and whose duties were to report any trespassing discovered and to protect the timber against fire.

Moreover, A. W. Fitzgerald was then still in actual occupancy of something less than forty-three acres of said 375 acre tract, claiming the equitable title to the residue, which consisted of said 300 acre tract, under the above-mentioned contract, under which he had originally taken such actual possession, as aforesaid.   He still held such possession under such claim and color of title, as he testifies, in substance, in the cause, notwithstanding the said deed from himself and wife to Payne, because under an agreement between himself and Payne, he, Fitzgerald, still remained the

beneficial owner of said 300 acre tract after such deed was made. This testimony was given in the presence of Payne, who did not testify, or introduce any evidence in the cause to the contrary. And there is other evidence in the cause tending to prove such continued beneficial ownership in A. W. Fitzgerald.

Further mention of material facts will be found in the opinion below.

*Volney E. Howard,* for the appellant.

*William A. Anderson,* for the appellee.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

Among the questions presented by the assignments of error, those involving the construction of the statute law of the State in the particulars hereinafter mentioned are novel in this jurisdiction and of exceptional interest and importance. We are indebted to the learned and able arguments of counsel on both sides of the cause and we will consider and determine the questions presented in their order as stated below.

The first question we have to consider is this—

1. Did the court below have jurisdiction of this suit in equity by bill *quia timet* to remove a cloud upon the title to the 300 acre tract of land mentioned in the above statement?

We are of opinion that, under the statute presently to be cited, this question must be answered in the affirmative.

The Extract Company takes the positions, (a) that such jurisdiction existed independently of statute, because it was in possession of the 300 acre tract of land and for that reason could not maintain an action of ejectment; and that,

if this be not so, (b) such jurisdiction was conferred by what is designated as the "White act," enacted February 20, 1912, amending section 3058 of the Code, and contained in Acts 1912, pp. 76-8, and 4 Pollard's Code, section 3058.

[1, 2] (a) Now it is true that, if the Extract Company, at the time it instituted this suit, had had actual possession of the 300 acre tract of land (having, as it did, the legal title to the land), it could have maintained this suit without the aid of the statute next above mentioned; because, in such case, such plaintiff would have had no remedy at law by action of ejectment (Hogg's Eq. Pr. sec. 46, pp. 82-3) ; but it appears from the statement of facts preceding this opinion it did not have such actual possession. It is also true that under the statute in Virginia (Pollard's Code 1904, sec. 2726) if the Extract Company at such time had had the legal seizin of the land, undisturbed by any actual possession of another, it might have maintained such suit against the defendant, Payne, as a "person claiming title thereto," without the aid of the White act. *Stearns* v. *Harman,* 80 Va. 48, 54-5; *McNamara* v. *Boyd,* 112 Va. 145, 70 S. E. 694. But the Extract Company and those under whom it claimed and derived title had their legal seizin of said land disturbed by the actual possession of A. W. Fitzgerald, set forth in the statement preceding this opinion, taken and held under the claim of equitable title also set forth in such statement. Legal seizing will not support the equity jurisdiction to remove clouds from title where the plaintiff is not in actual possession, unless the possession be vacant. 2 Story's Eq. Jur. (13th ed.), note on p. 11.

The rule of the common law that the entry and possession of a vendee is tolled as against his vendor and those in privity of estate with the latter, does not differentiate the cause before us. For the position of the Extract Company throughout this litigation has been that it denied the

existence of any contract of sale to the Fitzgeralds.   Therefore, it could not have taken the position in a bill *quia timet* that A. W. Fitzgerald was a vendee of its predecessor in title and that for that reason its legal seizin was undisturbed.   Hence, the Extract Company could not have maintained a suit *quia timet* in the premises on the jurisdictional ground that it had undisturbed legal seizing of the land.

The Extract Company therefore had its remedy at law by action of ejectment to try the title to and to recover the possession of said land.   And so far as appears from the allegations of the bill or the evidence in the cause, such remedy was complete and adequate.   No allegation is made in the bill of any impending injury or damage, to redress which the remedy at law aforesaid was inadequate.   Therefore, prior to the White act, the Extract Company could not have maintained this suit to remove a cloud from its title, on the jurisdictional ground that it had no remedy at law by action of ejectment nor on the ground that that remedy was inadequate.

[3]  (b) We come now to the consideration of the question whether under the White act this suit can be maintained?

This act, so far as material, is as follows:

"* * * Whenever the circuit and corporation courts have jurisdiction on the chancery side to remove clouds from title to real estate by bill *quia timet,* in case the party filing such bill were in possession of such real estate, such courts shall have jurisdiction to maintain such a bill whether the party filing the same be in possession of such real estate or not.   And any suit now pending to remove clouds from title, in which a final decree has not been entered, which, but for this act, would be dismissed for want of jurisdiction, shall be retained by the court and proceeded in as if brought after this act. * * *"

39

This statute, therefore, confers a jurisdiction on the courts mentioned which they did not possess as the law · was before the enactment of the statute; and it confers such jurisdiction in all cases of bills *quia timet* where the plaintiff is *not in possession* of the real estate affected, in suits instituted in one of the courts mentioned, where that court would have had jurisdiction of the case, as the law stood prior to the act, if the plaintiff had been *in possession* of such real estate at the time the suit was brought; in other words, the statute confers such jurisdiction in such a suit in all cases where the court, but for the act, would, under the law as it stood aforetime, have to dismiss the suit on the sole ground that the plaintiff was not in possession of the real estate affected at the time the suit was instituted.   Such a dismissal of such a suit on such ground was plainly what the act, in the language of it above quoted, sought to prevent.   That was the mischief in the pre-existing law which this part of the statute meant to cure, as is manifest from the language used.

The statute leaves undisturbed the jurisdiction of suits by bills *quia timet* as it existed prior thereto, in cases where the plaintiff is in possession of the real estate affected at the time of suit brought.   And we are not concerned in the cause before us with any consideration of the situations in which such a plaintiff may maintain a suit in equity on other grounds than that of removing a cloud from his title, such as to avoid a multiplicity of suits or to enjoin a trespasser; nor, indeed, are we here concerned, beyond that is said above, with the question of when a plaintiff *not* in possession of real estate may maintain a suit in equity to remove clouds upon the title or to enjoin a trespasser, although the plaintiff may have the legal title to the land, on the ground that his remedy at law is inadequate; nor with the question of when a plaintiff in or out of such possession may maintain a suit in equity to remove a cloud from his title

on the ground that his title is equitable—which last-named jurisdiction is the subject of a portion of the White act that is not involved in the cause before us.   Our consideration of the subject in hand, therefore, is confined to the new jurisdiction conferred on the courts aforesaid by that portion of the White act which is above quoted.

[4] Now, prior to the White act the courts mentioned had jurisdiction on the chancery side to remove clouds from title to real estate in all suits by bills *quia timet,* where the plaintiff held the legal title to such real estate and was in actual possession of it, if the deed, or other instrument or proceeding sought to be cancelled in truth constituted a cloud upon the title, as does the deed to Payne in the cause before us.   4 Pomeroy's Eq. (3rd ed.) sec. 1398; Hogg's Eq. Pr., sec. 46, pp. 82-5; 1 Barton's Chy. Pr. (2nd ed.), pp. 299-300; *Carroll* v. *Brown,* 28 Gratt. (69 Va.) 791; *Steinman* v. *Vicars,* 99 Va. 598, 39 S. E. 227; *Va. Coal & Iron Co.* v. *Kelly,* 93 Va. 332, 24 S. E. 1020; *Kane* v. *Va. Coal & Iron Co.,* 97 Va. 329, 33 S. E. 627; *Smith* v. *Thomas,* 99 Va. 86, 37 S. E. 784.   The ground upon which this jurisdiction rests in such class of cases, as appears from the authorities on the subject, is that injury from the continued existence of the cloud upon the title is reasonably apprehended by the plaintiff, and that being in possession of the real estate affected he cannot maintain an action of ejectment to try the title, and hence he is, in such case, without any remedy whatsoever at law, and the injury would be irreparable but for the remedy in equity.   In some of such cases it may be a matter of some doubt whether the instrument or proceeding which is alleged to be a cloud upon the title is in truth such a cloud thereon that the plaintiff may reasonably apprehend injury therefrom—as where doubt exists as to whether an instrument is so apparently void on its face that it creates no cloud on the title.   2 Story's Eq. Jur. (13th ed.), sections 698-710.   And it is to the ques-

tion of the reasonableness of the apprehended injury from the alleged cloud upon the title that Mr. Barton refers, on p. 284 of his valuable work (1 Barton's Chy. r., 1881 ed.), where, in reference to the relief by bill *quia timet,* he says: "The application of this species of relief is addressed to the sound discretion of the court under the circumstances of the particular case, and relief will ordinarily be afforded where injury may reasonably be apprehended, the ground for such relief resting upon the danger of irreparable mischief." Mr. Barton cites to support such text, 3 Daniell's Chy. Pr. (4th Am. ed.) 1961 note, and Story's Eq. Jurisprudence (13th ed.), *supra,* section 710.

[5] The quotation next above is cited and relied on for the appellant, Payne, to sustain the position that prior to the White act the courts mentioned did not have jurisdiction to remove clouds from title to real estate in all suits by bills *quia timet* where the plaintiff held the legal title to such real estate and was in actual possession thereof at the time of suit brought. It being urged that such jurisdiction exists only where its exercise is allowed in the sound discretion of the court. The *exercise* of such jurisdiction was (and is) undoubtedly in the sound discretion of such courts, when the reality of the apprehended danger of injury from the alleged cloud upon the title is in question, as aforesaid, but not otherwise. If, as in the instant cause, there be no doubt upon the point of the reality of such apprehended danger—if it be a real cloud upon the title which exists— and the plaintiff has the legal title to the land and the actual possession of it, the courts mentioned in every such case have the jurisdiction under consideration and had it prior to the White act. And prior to the White act it was precisely when such a case was alleged in the pleading that it was held that if "upon the hearing of the cause the evidence failed to show his" (the plaintiff's) "possession, the bill would be dismissed for want of jurisdiction in a court

of equity." *Smith* v. *Thomas,* 99 Va., at p. 87, 37 S. E. 784, citing a number of Virginia cases, including those above cited.

[6] The ancient landmarks of the exclusive jurisdiction at law to settle controverted boundaries of land and to try the title thereto by action of ejectment and the ill-effects that may flow from the disruption of so many established principles as would result from the allowance of a bill to be maintained to try the title to land under the guise of removing a cloud from the title thereto, are urged by the appellant, Payne, upon our consideration. And the following other authorities are cited and relied upon in that connection, viz: *Sulphur Mines Co.* v. *Boswell,* 94 Va. 480, 485, 27 S. E. 24; *Litz* v. *Rowe, etc.,* 117 Va. 752, 757, 86 S. E. 155, L. R. A. 1916 B, 799; *Deane* v. *Turner,* 113 Va. 237-9, 74 S. E. 165; *Calloway* v. *Webster,* 98 Va. 790, 791-2, 37 S. E. 276; *Collins* v. *Sutton,* 94 Va. 127, 128, 26 S. E. 415. But these authorities merely lay down the established rules governing the subject of the jurisdiction of courts of law and chancery independent of statute. The power of the legislature over the subject is, confessedly, plenary. It has acted in the matter by the enactment of the statute under consideration in plain and unambiguous terms. That statute, therefore, must, from the time it went into effect, govern the subject. The argument touching the policy of such a statute must be addressed to the legislative branch of the government. The courts cannot afford relief in the premises.

We may remark, however, that the statutory suit authorized by the White act is, as far as it goes, viz: to the extent of authorizing suits to remove clouds from title, substantially the same as the statutory suits to quiet titles which have been authorized in a number of other States. As said in 4 Pomeroy's Eq. Jur. (3rd ed.), section 1396, this "* * * in many States is the ordinary mode of try-

ing titles." And he adds: "The States adopting such statutes may be separated into two classes, the first and most numerous class requiring the plaintiff to be in possession, and the second allowing the action to be brought by a plaintiff either in or out of possession." In section 1397 of this valuable work, the same learned author says: "* * * possession is not required in States of the second class; the action may therefore be brought here in cases where a party at common law would be left to his remedy by ejectment. Several of the statutes, in express terms, allow the action to be brought to remove clouds from title; others are sufficiently general to include this as well as other adverse claims."

We may also mention that the Virginia statute, in a portion of it not above quoted, provides for a jury trial by issue out of chancery of any issue which but for the act would have entitled any party to a trial by jury, upon motion of such party. However, the verdict does not have the same effect as in an action at law, but only of verdicts in ordinary issues out of chancery.

It follows from what is said above that we are of opinion that the Extract Company had the right and option to institute its action of ejectment under the common law rule on the subject, or its suit in equity, as it has done, under the White act aforesaid.

[7] 2. Did the former pendency of the action of ejectment (set forth in the statement preceding this opinion), involving the same 300 acre tract now involved in this cause, wherein a predecessor in title of the Extract Company was plaintiff, and A. W. Fitzgerald, a predecessor in title of Payne, was defendant, and the order of court entered under what is generally designated as the five-year rule of the statute (section 3312 of the Code), directing that such action "be stricken from the docket," operate as a bar or estoppel to the institution or maintenance of the cause now before us?

We are of opinion that such question must be answered in the negative.

It is urged by the appellant, Payne, that said order "was such a final termination of the matter in litigation as (will) estop the plaintiff in that action and his privies, who acquired their interests after the commencement of that suit, from asserting the same claim in a subsequent suit"—and section 2756 of the Code is referred to in this connection.

Section 3312 of the Code, under which said order was entered, is as follows:

"Any court in which is pending a case wherein for more than five years there has been no order or proceeding except to continue it, may, in its discretion, order it to be struck from its docket; and it shall thereby be discontinued. A court making such order may direct it to be published in such newspaper as it may designate. Any such case may be reinstated, on motion, within one year from the date of such order, but not after. (Code 1849, p. 657, c. 173, sec. 7.)"

By the express terms of the statute, the order operated upon the pendency of the suit or action, and the authority thereby given the court extends no farther than to "order it to be struck from the docket." And as to what shall be the effect of such order, the statute itself provides that "it" (the case or cause) "shall thereby be discontinued."

[8] Now, the term "discontinuance" has a well-settled meaning in the law and has had from a very ancient time. "A discontinuance is 'in effect a non-suit.' " Burks' Plead. and Pr., p. 598. To the same effect, 2 Chitty's Blackstone, p. 296; *Muse* v. *Farmers' Bank of Va.,* 27 Gratt. (68 Va.) 257; *Doan* v. *Bush,* 130 Ark. 566, 198 S. W. 261, L. R. A. 1918-B, 525, 527. "The effect of a non-suit is simply to put an end to the present action, but is no bar to a subsequent action for the same cause." Burks' Plead. and Pr., p. 596.

The cases of *Echols' Ex'r* v. *Brennan,* 99 Va. 150, 37 S. E.

786; *Jones* v. *Turner*, 81 Va. 709, and *Battaile* v. *Maryland Hospital*, 76 Va. 63, are cited and relied on by appellant. The first-named case, however, on the point under consideration, involved only the question of whether a cause dismissed under said statute can be reinstated on the docket and be further proceeded in after the expiration of the period allowed for such reinstatement by the statute. The other two cases last cited involved the question whether a final decree (not under section 3312) dismissing the cause can be set aside, except on a bill of review in the court which rendered it or by appeal, and that within the time limited by the general statute on these subjects. None of these cases involved or decided the question which we have under consideration, namely: of the effect of a final decree or order upon the rights of the parties to the suit or action in which it is entered, when such rights are in controversy in a subsequent and different suit or action between the same parties.

The recent case of *Snead* v. *Atkinson*, 121 Va. 182, 92 S. E. 835, not cited in argument, involved the question whether a decree is void which is entered on proceedings by petition in a cause, subsequent to the order of dismissal thereof under the five-year rule and statute aforesaid without any reinstatement of the cause on the docket. It was held in such case that the order of dismissal was final and put an end to all further proceedings in that cause until and unless the cause was reinstated on the docket, and that the subsequent decree therein was void. But that holding, likewise, did not touch the question which we have now under consideration in the cause before us.

[9] The question last mentioned must be resolved by the application of the rule of *res adjudicata* where the cause of action and the parties or their privies are the same in the subsequent proceedings, as in that in which the final decree or order was entered, but the suits or actions are not the

same—which is the situation as presented by the cause before us. This rule is well settled. One essential factor for the application of such rule, it is true, is that there must have been a final decree or order in the former proceeding. But this is not of itself sufficient to make the rule applicable. There is another factor, the existence of which is equally essential to render the decree or order in a former proceeding a bar to a subsequent suit or action on the same cause of action by the same parties or their privies, and that is this: such final decree or order must have been entered "on the merits." *Steinman* v. *Clinchfield Coal Corp.,* 121 Va. 611, 619, 93 S. E. 684, and authorities cited. This is a well-established exception to the general rule, that a final decree or order in a proceeding puts an end, as between the parties thereto and their privies, to all subsequent litigation over the same claim or demand whether pleaded or litigated in the first proceeding or not, if it might have been so pleaded and litigated.

An order of retraxit has the effect contended for by appellant, Payne. Burks' Plead. and Pr., p. 590. But such an order, in truth, goes to the merits of the case, because it is based on the renunciation by the plaintiff of his cause of action. And an order or decree dismissing an action or suit "agreed" has the same effect, but that is because such an order imports that the dismissal is on the merits by stipulation of the parties. *Hoover* v. *Mitchell,* 25 Gratt. (66 Va.) 387; *Doam* v. *Bush, supra,* 130 Ark. 566, 198 S. W. 261, L. R. A. 1918-B, 523-5. The mere dismissal of a case "is not a retraxit, but stands on the same footing as a nonsuit, and does not bar another action for the same cause." Burks' Plead. and Pr. 590; *Cahoon* v. *McCulloch,* 92 Va. 177, 23 S. E. 225.

[10] The judgment referred to in section 2756 of the Code, relied on for appellant, Payne, as above noted, is a judgment on the merits.

40

Now, the order in the ejectment suit was unquestionably a final order and put an end to all further proceedings in that case, as the case was neither reinstated on the docket (nor any motion made therefor after notice to the opposite party) within the statutory period allowed for such reinstatement. But not being an order on the merits of the case in which it was entered, the effect of such final order was merely to put an end to further proceedings in that case. It could not and did not have any effect upon the rights of the same parties not adjudicated therein, which are involved in a subsequent litigation between them in a different cause.

We will say, in passing, that the question whether, in such a case, a motion to reinstate, if made on legal notice to the opposite party, before the expiration of the year, but which is not acted on until after the expiration of the year period mentioned in the statute, will prevent the bar of the statute if then favorably acted upon, is not presented by the cause before us, and hence is not passed upon by us.

. [11] 3. By the statute law of Virginia (section 2465 of the Code), as it stood when and after the contract was entered into between Loving, the predecessor in title of the Extract Company, and A. W. Fitzgerald, the predecessor in title to Payne, the possession of Fitzgerald under that contract, set forth in the statement preceding this opinion, until the act of March 4, 1896 (Acts 1895-6, p. 842) went into effect, and again after that act was repealed by Acts 1897-8, p. 834, until the act of January 15, 1900 (Acts 1899-1900, p. 89) went into effect, was constructive notice of the rights of A. W. Fitzgerald under said contract to subsequent purchasers for value, the same in effect as the notice which is imputed by the recording acts. *Chapman* v. *Chapman,* 91 Va. 397, 21 S. E. 813, 50 Am. St. Rep. 846.

Section 2465 of the Code, so far as material, then read as follows:

"Every such contract in writing  *  *  *  shall be void as to subsequent purchasers for valuable consideration without notice,  *  *  *  until and except from the time that it is duly admitted to record in the county or corporation wherein the property embraced in such contract  *  *  * may be."

By the Acts 1895-6, p. 842, section 2465 of the Code was amended by the addition of the following language:

"Provided, that possession of any estate or term without notice or other evidence of title shall not be notice to said subsequent purchasers for valuable consideration."

It is a part of the well-known history of the subject in this State that such proviso was enacted to change the rule announced in *Chapman* v. *Chapman, supra.*

This proviso was omitted from the amendment of the statute by Acts 1897-8, p. 834, but was restored by the act amending the same statute in Acts 1899-1900, p. 89, so that long before the deed from Whelen to the Extract Company, of date December 9, 1903, and before the second deed to the Extract Company from Leas & McVitty, of date April 1, 1910, set forth in the statement of facts preceding this opinion, the rule of *Chapman* v. *Chapman* had been abolished by the statutory provision aforesaid and the said possession of A. W. Fitzgerald did not operate to give the Extract Company constructive notice of the alleged rights of A. W. Fitzgerald under the contract aforesaid, unless the statute was inoperative or invalid as to contracts in existence prior to such enactment.

The positions of appellant Payne in his petition for appeal are, in substance, as follows:

(a) That, if properly construed, the statute in question, as amended, does not affect contracts in existence prior to its enactment; that to so construe the statute would make it retroactive, which is never done, unless such an intent is plainly expressed, which is denied of this statute; and if this position be not sound—

(b) That, as the law was when A. W. Fitzgerald took the possession aforesaid under said contract, he acquired a vested right of property under the doctrine of *Chapman* v. *Chapman,* aforesaid, that this vested right continued to inhere in A. W. Fitzgerald until he transmitted it from himself to the appellant, Payne; and that A. W. Fitzgerald could not have been divested of such right by the recording act aforesaid. That the latter contains no saving clause to owners of land who had acquired their rights under the law as it previously existed. That it provides no method by which such owners might put on record their claim to previously acquired rights, as, for instance, it fails to provide for the recordation or the filing of notice of claims under contracts for land which have not been acknowledged for recordation. That it was not within the power of Fitzgerald to have had his contract acknowledged for recordation after the enactment of the statute, for the reasons hereinafter more particularly mentioned. And that when this new recording act was enacted, Fitzgerald had been in possession of this land under his written contract for a period of sixteen years and that to construe this statute so as to deprive him of these rights, or the rights of transmission of the same to others, would be nothing short of confiscation.

These positions raise for our determination the questions which will be passed upon in their order as stated below.

4. Does the new recording statute (section 2465 as amended) under consideration affect contracts in existence prior to its enactment?

This question must be answered in the affirmative.

We are of opinion that the purpose and meaning of this statute, as amended, is to provide that on and after it took effect and so long as it remained in force the mere possession aforesaid should not operate to give the constructive notice aforesaid in lieu of recordation of the contracts there-

in mentioned; so that the original and preceding portion of the statute (section 2465) would thereupon become operative upon all contracts of the kind mentioned in the statute, and every such contract would "be void as to subsequent purchasers for valuable consideration without notice, * * * until and except from the time that it is duly admitted to record in the county or corporation wherein the property embraced in such contract * * * may be"—as provided in such preceding portion of the statute.

Such construction of the new recording statute may result in its affecting some contracts in existence prior to its enactment, but not necessarily so. Only those contracts which are not recorded as required by the statute prior to the acquisition of rights by purchasers for value and without notice, are affected by the statute. The purchasers who are protected by such statute are future purchasers only. So that in no true sense can the statute be said to be retroactive in its operation.

The practical operation of the statute as amended, as aforesaid, was to give said A. W. Fitzgerald, from the time of its first enactment, March 4, 1896, until the extract company obtained its first deed, December 9, 1903—a period of over seven years—within which to comply with such statute by recording said contract, before any rights of the Extract Company as a purchaser for value attached under such statute. Similarly, a period of nearly fourteen years was given for such purpose before the second deed of the Extract Company was obtained on April 1, 1910.

We come now to the consideration of the following questions:

5. Did the recording statute under consideration in its effect upon the contract aforesaid divest A. W. Fitzgerald of any vested right of property? And was the statute for that reason invalid?

These questions must be answered in the negative.

The statute merely changed a pre-existing rule of evidence.

As said in *State* v. *King*, 64 W. Va. 546, 63 S. E. 468:

"The legislature can, without infraction of the Constitution * * * change the rules of evidence * * * even as to pre-existing contracts and rights, provided it does not destroy the contract or right. Cooley's Const. Lim. 286, 288, 361. 'The right to have one's controversies determined by existing rules of evidence is not a vested right.' Cooley's Const. Lim. 367. Cooley says that these rules go to remedy and do not constitute a part of the contract, and cannot be regarded as of the same essence of any right which a party may enforce. *Dequaise* v. *Harris*, 16 W. Va. 345. 'There is no vested right in a rule of evidence, and as such rules only affect the remedy, it is within the constitutional power of the legislature to modify them.' 6 Am. and Eng. Ency. of Law, 950. See cases cited in *Marx* v. *Hanthorn*, 148 U. S. 181 [13 Sup. Ct. 508, 37 L. Ed. 410]. See *Burk* v. *Putnam*, 113 Iowa 232, 84 N. W. 1053, 86 Am. St. Rep. 372, and note."

Recordation statutes have for their purpose the better security and repose of titles, and they "may postpone one who voluntarily neglects to avail himself of registry acts, which enable him to give notice to all the world of his claim, to the claim of a subsequent purchaser who has acted on the faith of a public record." *Connecticut Mutual Life Co.* v. *Talbot*, 113 Ind. 373, 14 N. E. 586, 3 Am. St. Rep. 661, citing cases.

As to the position of appellant, Payne, that the contract under which he claims was not acknowledged for recordation, and that the vendor party thereto having died in 1895, before the statute was enacted, his acknowledgment could not be obtained, and hence it was not in the power of A. W. Fitzgerald to have had such contract recorded after the enactment of the statute, so as to prevent the taking away of his rights aforesaid by the operation thereof.

We are of opinion that such facts are immaterial.

The statute, section 2465, as it existed at the time such contract was executed, required it to be recorded in order to give notice of its existence to all the world, unless the vendee, A. W. Fitzgerald, thereunder chose to rely on the then existing rule of evidence that actual possession of the land embraced in the contract gave notice of its existence. If he made that election he took the risk of a subsequent change of law which might change such rule of evidence.

Further: Notwithstanding the death of Loving in 1895, leaving the contract unacknowledged for recordation, as the registry statute theretofore and has ever since required, the possession aforesaid of A. W. Fitzgerald gave the constructive notice aforesaid to the predecessors in title of the Extract Company before said statute and while it was not in force. The contract, if valid and binding, as claimed by appellant, Payne, might have been asserted by A. W. Fitzgerald by suit by bill *quia timet* (if the contract was not then for any reason immediately enforceable), against such predecessors in title of the Extract Company, up until the first deed to the latter aforesaid—that is to say, during a period of over seven years and during a period of nearly fourteen years before the second deed to such company, by which suit the predecessors in title of the extract company could have been injoined and restrained from selling or conveying to any one else the land embraced in the contract, which would have prevented the taking away or impairment of any of the aforesaid rights of Fitzgerald or of appellant Payne, by the operation of said recording statute.

The sole question remaining for our consideration is the following:

6. Does the evidence show that the Extract Company had actual notice, or such notice as placed upon it the duty of enquiry which would have led to actual notice of the equitable title aforesaid in A. W. Fitzgerald subsequently

transmitted to appellant, Payne, as aforesaid, prior to the first or second deed to such company?

The evidence in the record on this subject is conflicting. The court below was of opinion that it does not prove such notice to the Extract Company. As no legal principle is involved in this question we do not feel that any good purpose would be served by a detailed discussion of the evidence pro and con. We deem it sufficient to say that we have carefully considered all of the evidence in the record and we are of opinion that it appears by a decided preponderance of the evidence that the Extract Company did not have the notice in question, either before its first or second deed; on both of which occasions therefore, it became a complete purchaser for value of the 300 acre tract of land involved in this suit without notice of the contract aforesaid on which the appellant Payne relies.

The decree of the court below under review was in accord with the views above expressed on all points and it will therefore be affirmed.

*Affirmed.*